HOLMES, Plaintiff in error, vs. THE STATE, Defendant in error.

*January 13—January 31, 1905.*

*Criminal law and practice: Assault with intent to kill: Self-defense: Evidence: Instructions to jury.*

1. Upon the evidence in this case (sufficiently stated in the opinion) it is *held* that the jury were warranted in finding that the shooting of a person by defendant was with intent to murder, and not in lawful self-defense.
2. On a trial for assault with intent to murder, there being evidence that defendant harbored ill will not only against the person assaulted but also against the other employees of the same establishment, evidence of threats made by defendant against any of them, even as long as nine months before the assault, was admissible to show his purpose in visiting such establishment, armed with a revolver, at the time of the assault.
3. The jury were charged that, in order to convict, they must find, first, that defendant assaulted the person named, second, that defendant was armed with a dangerous weapon, and, third, that the assault was made with intent to murder said person; but were told that as to the first and second elements of the crime there was no dispute, defendant having admitted that he shot said person with a revolver. *Held*, that this could not have misled the jury to understand that a criminal assault was admitted or undisputed, especially as they were afterwards carefully instructed on the subject of unlawful assault as something distinct from the assault as to which there was no dispute.

4. Although the court had not yet instructed the jury on the subject of justification for the shooting, an instruction that if they found defendant guilty "under the instructions so far given" they should return a verdict accordingly, was not error, where the jury had just been told that they should find defendant guilty unless they found the shooting "was justifiable under the rules which will hereafter be given to you by the court," and proper instructions were thereafter given on that subject.

5. It was not error for the court to state to the jury that the prosecution "claims there is some evidence tending to prove" certain facts, and to instruct the jury in respect thereto, where there was in fact a basis in the evidence for such claim.

6. The mere occurrence of a previous affray in which defendant had been ejected from a building did not justify his shooting of one of his assailants after he was entirely free from them.

7. An instruction that the taking of human life "cannot be justified on some slight appearance of danger. Nothing short of actual pressing necessity to the apprehension of the defendant will justify the taking of human life in self-defense," was faulty in that it was not qualified to the effect that one may kill his assailant if he believes and has reasonable ground to believe that he is in imminent danger of receiving some great personal injury at the hand of such assailant.

8. The omission, however, to explain to the jury what constitutes a "pressing necessity" was not error, in the absence of any request by defendant for such explanation; and the omission of the requirement of a reasonable ground for belief in such necessity, was favorable to defendant and therefore not an error which should work reversal.

ERROR to review a judgment of the circuit court for Shawano county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

The plaintiff in error was charged with having committed the offense of assault with intent to murder George Walter. He pleaded not guilty. The trial resulted in his conviction as charged. The evidence established, or tended to prove, this situation: George Walter, Sr., was the owner of a brewery property at the time of his death, which occurred in 1899. He left surviving a widow and nine children, two of such children, Martin and George, being of mature years. For some time after his death, plaintiff in error, *John G. Holmes,* worked in the brewery as an employee of Mrs. Walter, who

had charge of the business for herself and children. He and Mrs. Walter during such time associated together so as to scandalize her and her family in the opinion of Martin and George, resulting in their becoming very hostile to him and causing his discharge. The intimacy between *Holmes* and Mrs. Walter continued thereafter, against the strenuous opposition of her said children, resulting in their becoming man and wife. George was employed at the brewery at the time of the occurrence in question, and for a considerable period theretofore he had charge of the boiler room. Martin worked some of the time in the brewery, and some of the time he was away at school. The employees to a considerable extent joined with the Walter boys in hostility to *Holmes,* creating such a state of things that the latter's presence in or around the brewery was liable to cause more or less disturbance. On that account Christian Walter, who, because of the facts aforesaid, became the manager of the brewery, prohibited *Holmes* from visiting the property. He was also ordered to keep away from the premises by the Walter boys.

For some time before the occurrence in question the feeling between *Holmes* and the Walter boys was so bitterly hostile that the former knew his presence at the brewery property was liable to lead to a breach of the peace. He made threats of personal violence to the Walter boys, the bookkeeper at the plant, A. J. Schmidt, and the trustee of the property, Christian Walter. He visited the property on the day in question armed with a revolver secreted about his person. He entered the boiler room where George was working, and was immediately ordered to leave. He refused to go, whereupon George caused Martin to be sent for, who speedily arrived, and the two assaulted *Holmes,* treating him quite roughly by pulling him down upon the boiler room floor and striking and choking him. The assault lasted some little time without any serious injury to *Holmes* being produced, when he was finally ejected from the room. The boys followed him outside

thereof, continuing to admonish him to leave and keep away from the premises. He indicated a willingness to comply and apparently started to do so, whereupon George turned to go back to his work. The movements of the two placed George nearly with his back towards *Holmes,* who quickly drew his revolver and shot George in the back, the course of the bullet as it entered the body being towards a vital part. George fell forward when the bullet struck him and *Holmes* immediately turned his weapon in the direction of Martin and fired at him. He used language when the shooting commenced and immediately thereafter indicating that his intention was to use the revolver with fatal effect.

On many of the points above mentioned the evidence was more or less conflicting. *Holmes* denied having made the threats testified to. He said that his purpose in going to the brewery was to find one of his wife's children, as she requested him to do; that when he entered the boiler room he explained his purpose to George and upon being roughly ordered away he protested, saying in effect that there was no occasion therefor or for any trouble, but started to leave, when he was assaulted by both boys and misused substantially in the manner testified to by them as above detailed. He said that after he left the boiler room and was trying to safely leave the premises the boys followed him up, while accomplices among the employees were near at hand acting in such a manner as to impress him that he was in danger of being assaulted, not only by the boys, but their associates; that one of the latter approached George with an iron bar in his hands, or a weapon with iron on it, apparently to assist George, and that as he got near enough to the latter to enable him to take the weapon he turned apparently to do so, and thinking he intended therewith to make a deadly assault, he (*Holmes*) drew his revolver and fired the first shot. Seeing Martin immediately raise his hands as if to throw something at him he fired in his direction to scare him.

There were exceptions to rulings on evidence and instructions and there was also an exception to a refusal to set aside the verdict as contrary to the law and the evidence.

For the plaintiff in error the cause was submitted on the brief of *A. M. Spencer,* attorney, and *Henry D. Ryan,* of counsel.

For the defendant in error there was a brief by the *Attorney General* and *Walter D. Corrigan,* second assistant attorney general, and oral argument by *Mr. Corrigan.*

MARSHALL, J.   A contention made on behalf of the plaintiff in error that the verdict is not sustained by the evidence seems to deserve but brief treatment. Sufficient is disclosed in the statement to indicate clearly that the jury had ample room for reaching the conclusion which they did. Counsel hold up to view the story of *Holmes* as to the occurrences characterizing his conduct on the occasion in question as a demonstration that he used his revolver in lawful self-defense—instead of challenging the sufficiency of the evidence tending to establish the offense charged to warrant the verdict, as should be done in such a situation. If the evidence in any reasonable view thereof which the jury had a right to take justifies the verdict, that is sufficient on a motion to set it aside as contrary thereto.   There is ample evidence in the record showing that after the affray in the boiler room the accused went therefrom and was free to go from the premises undisturbed; that he knew the Walter boys and their associates supposed that he had fully submitted to their insistence that he should leave the premises, and presently, at least, he was not in danger of being interfered with, unless he invited it; that George so regarded the situation and turned to go back to his work, while *Holmes* started, seemingly, to leave the grounds, but took such a direction as to place himself near to and in the rear of George, as related in the statement, when he suddenly drew his revolver and shot George, accompanying his act by ex-

pressions strongly suggesting a premeditated design to kill.
Martin Walter's evidence as to the circumstances of the shoot-
ing, which seems to be well corroborated by other witnesses,
is, in the main, as follows:

*Holmes* went out straight from the boiler house ten or
twelve feet. George told him to get off the property. After
they talked some minutes he said he would go. He was then
three or four steps from George. The latter replied, "That
is all we want of you." George then turned and walked two
or three steps towards the boiler house door, while *Holmes*
started, apparently, towards Lawrence street. As the two
made such movements *Holmes* passed in the rear of George
and not far from him, when he pulled out his revolver and
shot George, at the same time using some "cuss words." He
then turned on me and fired, saying "You too!" It is useless
to argue in the face of such testimony given by several wit-
nesses, in connection with the undisputed fact that the shot
fired at George was directed towards a vital part of his per-
son, that the jury were not warranted in finding that the act
was characterized by intent, on the part of *Holmes,* to take
human life, and not by lawful defense of his person.

The evidence abundantly shows that the manager of the
brewery property, Christian Walter, and the employees under
him, including the Walter boys, were hostile to *Holmes* and
were of one mind in respect to prohibiting him from frequent-
ing the premises, and that he reciprocated such hostile feel-
ing. It abundantly appears that he knew the feeling of the
Walter boys towards him was so intense that they were re-
solved to use force, if necessary, to prevent his coming upon
the property. For the purpose of showing that when he went
to the brewery on the day in question he knew, or had good
reason to believe, his conduct was liable to cause a breach of
the peace, and that he went, nevertheless, armed with a re-
volver and determined to use it upon the Walter boys or any-
body interfering with his movements, papers in a judicial

proceeding, which had been served upon him, prohibiting him from entering the brewery or frequenting the premises, were received in evidence. For the same purpose evidence was received as to his having made threats to severely injure Christian Walter about five months prior to the assault, A. J. Schmidt, the bookkeeper, about the same time, and Ernest Eick and others, including the Walter boys, about some nine months before the assault. The testimony as to Christian Walter was stricken out. A question is raised as to whether, if the reception of the testimony was error, striking it out, under the circumstances, remedied the mischief. Further question is raised as to whether the evidence of Schmidt was proper, no ground of impropriety being suggested, and also as to whether the testimony of the witness Eick was not improper because of remoteness. It is suggested on the part of respondent that no proper exception was preserved to the ruling as to Schmidt's evidence, and that in any event all the evidence was proper, and with that we cordially agree. It all had a material bearing on what the intent of *Holmes* was in visiting the boiler room and using his revolver under the circumstances before related. As we have seen, the evidence strongly indicates that he harbored ill will not against George Walter alone, but against the whole brewery outfit, or at least against the significant figures thereof. Under the circumstances, his conduct as to any of them was evidentiary of his purpose in visiting the property, armed as he was on the day in question. No sufficient answer is made to that phase of the case insisted upon by respondent.

We are referred to *Paulson v. State,* 118 Wis. 89, 94 N. W. 771, as in point, language from the opinion being quoted to the effect that in a criminal prosecution evidence of general bad character, or the commission of other specific acts than the one in question, should not be permitted, *"except when so connected with the offense that their connection directly tends to prove some element of the alleged offense."* The ex-

ception is a conclusive answer to the contention of counsel for plaintiff in error. It is because the conduct of *Holmes* as to each person mentioned in the evidence complained of, including the Walter boys, sprang from ill will toward all, and was so connected with the offense charged as to directly prove criminal intent, which was vital to the maintenance of the charge in the information.

Complaint is made because the court instructed the jury in these words:

"In order to convict, it will be necessary to find from the evidence, beyond a reasonable doubt, three things: First: An assault on George Walter by the defendant. Second: That the defendant was armed with a dangerous weapon. Third: That such assault was made with the intent on the part of the defendant to kill and murder George Walter. Now with reference to the first and second of these elements or ingredients of this crime, there is no dispute. The defendant admits he fired the shot from the revolver which struck George Walter, and that is not denied in any way. The fact of the assault was present or is present, so as to the first two of these points I say there is no question."

It is said it is not true that there is no question but that the accused assaulted George Walter; that the term "assault" in law is a wilful attempt to do bodily harm to another and involves a wrongful purpose. Counsel evidently fail to appreciate the distinction between the offense of assault, which involves a wrongful purpose, as suggested, and does not involve necessarily actually reaching the assaulted person, and the term "assault" in its mere lexiconic sense, which means the doing of violence by one to another, which may or may not include the element essential to criminality. The distinction is plainly noted in all law and general dictionaries. The court unmistakably used the term in the latter sense, because the assault spoken of, as clearly indicated, consisted of the act of shooting George Walter, disassociated from all circumstances rendering the same unlawful. That is further clearly

indicated by the fact that later in the charge the jury were carefully instructed on the subject of unlawful assault as something' distinct from the assault said to have been established beyond controversy. It is not within reasonable probability that the jury were at all misled by the language counsel criticises, although the manner adopted by the court in his instruction of presenting the case to the jury does not meet with our unqualified approval. The better way would have been to state that the first two essentials mentioned were established beyond reasonable controversy, to the extent that defendant was present on the occasion in question armed with a dangerous weapon, and that he, in fact, with such weapon shot George Walter.

Error is further assigned because the court instructed the jury:

"If you find defendant guilty as charged in the information under the instructions so far given you by the court, of course that is the end of your labors in this case, and you will return such a verdict."

It is said that such instruction is erroneous because the court had not, up to the time it was given, informed the jury as to all questions essential to be passed upon unfavorably to the accused in order to justify a conviction; that he had not instructed the jury on the subject of justification for the act of shooting. True, it would have been a more logical treatment of the case to have given the instruction on that matter before using the language complained of, but proper instructions were afterwards given in respect thereto and such reference was made to the same before the use of such language that the jury were unmistakably told that such added instructions were to be deemed included in the term "under the instructions so far given to you by the court." Just prior to the use of those words the court said: "You should find him guilty as charged in the information, unless you find that such shooting was justifiable under the rules which will here-

after be given to you by the court." That plainly, in effect, placed the instruction on the subject of justification before the language excepted to.

Further error is assigned in the giving of this instruction:

"The state claims that there is some evidence tending to prove that the defendant, in going upon the brewery premises and into the building where George Walter, the complaining witness, was, under the circumstances under which he did enter and with the knowledge of the unfriendly relations existing between himself and the two Walter boys, George and Martin, voluntarily went into said building where the complaining witness was, with the intent and for the purpose of provoking an affray or a difficulty with said George Walter, and there so conducted himself as to bring on the assault and · affray as it took place in the boiler room. The court instructs you that if you believe and find from the evidence that the defendant did so, that is to say, that he voluntarily entered and went into said boiler room with the intent and for. the purpose of provoking an affray and difficulty with said George Walter, there so conducted himself as to bring on the assault and affray as it took place in the boiler room, that he, the defendant, is not entitled to the plea of self-defense. And the assault and battery which took place in the boiler room cannot excuse or justify the shooting which took place outside the boiler room."

True, the prosecution claimed as stated and there was a basis in the evidence therefor. We cannot discover anything wrong in that. Doubtless the instruction is correct, that the mere occurrence of the affray in the boiler room did not justify the shooting of George after the accused was entirely free from him, as the evidence conclusively shows he was.

Lastly, complaint is made of the giving of this instruction:

"The taking of human life is a matter of such terrible significance that it cannot .be justified by some slight appearance of danger. Nothing short of actual pressing necessity to the apprehension of the defendant will justify the taking of human life in self-defense, or an assault with the intent to take human life in self-defense. The danger which will jus-

tify killing, or an assault with intent to kill, must be actual, pressing, urgent, to the apprehension of the defendant, and if the defendant, *Holmes,* was in fault in creating the situation of danger, his right of self-defense did not arise until he had done his utmost to avoid the necessity of shooting the assailant."

It is said that there was no evidence tending, in any view of it, to prove that *Holmes* was at fault in creating the situation of danger which he claimed led to the shooting. Enough has been said to show that counsel is clearly in error on that point. Further, it is contended that the instruction is faulty because the words "cannot be justified on some slight appearance of danger. Nothing short of actual pressing necessity to the apprehension of the defendant will justify the taking of human life in self-defense," were not qualified as required by the rule in *Perkins v. State,* 78 Wis. 551, 47 N. W. 827, to the effect that under the circumstances stated in the instructions one may kill his assailant, if he believes and has reasonable ground to apprehend that he is in imminent danger of receiving some great personal injury at the hand of such assailant. Doubtless, the instruction is faulty as contended. It is suggested that the form used by the learned court should not be adopted in future cases in the same or in other jurisdictions. However, it seems that the error was harmless. The jury were told that one may rightly take human life when he himself has not created the necessity therefor, if to his apprehension there is a pressing necessity therefor. True, there must be such pressing necessity, and so far the charge was right, though what constitutes such necessity should have been explained to the jury, but it was not error to omit to do so, since no request in that regard was made on behalf of the plaintiff in error. True, also, the "pressing necessity" spoken of must be to the apprehension of the person assaulted, but he is not justified in killing his assailant without there being still another element. There must be reasonable ground to

Damkoehler v. Milwaukee, 124 Wis. 144.

believe that such necessity exists. As the learned court left the question, a person may be justified in killing another whether such person has any reasonable ground to believe there is a pressing necessity therefor, so long as he in fact believes there is. No further analysis of the instruction complained of is necessary to demonstrate that while it was erroneous, the error was in favor of the accused, which, of course, does not furnish any legitimate basis for reversing the judgment. *Fertig v. State,* 100 Wis. 301, 310, 75 N. W. 960.

The foregoing covers all questions of any importance suggested for our consideration. The record is free from any harmful error whatever, and the judgment must be affirmed.

*By the Court.*—The judgment is affirmed.