TOPOLEWSKI, Plaintiff in error, vs. THE STATE, Defendant in error.

*November 14—December 4, 1906.*

*Criminal law: Trial: Reception of evidence: Hearsay: Appeal and error: Harmless error: Larceny: Elements of offense: Trap set for offender.*

1. Subject to recognized exceptions hearsay evidence is not allowable, and its admission·is presumed to be prejudicial unless the contrary clearly appears.
2. On the trial of a person for a particular offense, evidence tending to prove that he has committed other distinct offenses is incompetent and generally prejudicial. The evidence should be ʼ confined to the particular offense charged.
3. In a criminal prosecution tried by the court without a jury the admission of improper evidence is to be regarded on appeal as

having been harmless, unless it clearly appears that otherwise the finding would probably have been different.

4. In a prosecution for larceny the prosecutor, a packing company, procured D., its employee, to, arrange with defendant for the latter to consummate, as he supposed, larceny of the prosecutor's goods. Defendant in the course of the negotiations so sanctioned by the prosecutor suggested to D. the plan to be followed, which was agreed upon between the two, each to be an actor in the matter. Subsequently the plan was sanctioned by the prosecutor, the purpose on the part of the prosecutor being to entrap and bring defendant to justice. The prosecutor carried out the part of such plan necessary to its consummation assigned to it in the agreement between defendant and D., defendant not knowing that the prosecutor was advised of the impending offense, and at the finality caused one of its employees, tacitly at least, to consent to the taking of the goods, such employee not knowing the real nature of the transaction. *Held:*

(1) The conduct of the prosecutor took from the transaction the element of trespass or nonconsent essential to the crime.

(2) When D. agreed to procure the prosecutor to do the acts necessary for defendant to consummate his part of the plan, the prosecutor in legal effect agreed thereto.

(3) The acts of the prosecutor constituted consent to the appropriation of the goods by defendant.

5. Where the owner of property, by himself or his agent, actually or constructively, aids in the commission of the offense, as intended by the wrongdoer, by performing or rendering unnecessary some act in the transaction essential to the offense, the would-be criminal is not guilty of all the elements of the offense.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BRAZEE, Judge. *Reversed.*

The accused was charged with having stolen three barrels of meat, the property of the Plankinton Packing Company, of the value of $55.20, and was found guilty. The cause was appealed to and tried in the municipal court of Milwaukee county on evidence taken in the lower court, a jury being waived. The accused was again convicted and sentenced as before to pay a fine of $100 and $42.84, costs of prosecution, and to be committed to the house of correction of Milwau-

kee county until such payment should be made. There was a motion to set aside the conviction and for a new trial and also a motion in arrest of judgment. Both motions were denied. The fine and costs were paid under protest, to avoid the consequences as to imprisonment.

The evidence was to this effect: The Plankinton Packing Company suspected the accused of having by criminal means possessed himself of some of its property and of having a purpose to make further efforts to that end. A short time before the 14th day of October, 1905, one Mat Dolan, who was indebted to the accused in the sum of upwards of $100, was discharged from the company's employ. Shortly theretofore the accused pressed Dolan for payment of the aforesaid indebtedness and, the latter being unable to respond, the former conceived the idea of solving the difficulty by obtaining some of the company's meat products through Dolan's aid and by criminal means, Dolan to participate in the benefits of the transaction by having the value of the property credited upon his indebtedness. A plan was accordingly laid by the two to that end, which Dolan disclosed to the company. Such plan was abandoned. Thereafter various methods were discussed of carrying out the idea of the accused, Dolan participating with the knowledge and sanction of the company. Finally a meeting was arranged between Dolan and the accused to consider the subject, the packing company requesting the former to bring it about, and with knowledge of Dolan causing one of its employees to be in hiding where he could overhear whatever might be said, the arrangement being made on the part of the company by Mr. Layer, the person in charge of its wholesale department. At such interview the accused proposed that Dolan should procure some packages of the company's meat to be placed on their loading platform, as was customary in delivering meat to customers, and that he should drive to such platform, ostensibly as a customer, and remove such packages. Dolan agreed to the

proposition and it was decided that the same should be consummated early the next morning, all of which was reported to Mr. Layer. He thereupon caused four barrels of meat to be packed and put in the accustomed condition for delivery to customers and placed on the platform in readiness for the accused to take them. He set a watch over the property and notified the person in charge of the platform, who was ignorant of the reason for so placing the barrels, upon his inquiring what they were placed there for, to let them go; that they were for a man who would call for them. About the time appointed for the accused to appear he drove to the platform and commenced putting the barrels in his wagon. The platform boss supposing, as the fact was, that the accused was the man Mr. Layer said was to come for the property, assumed the attitude of consenting to the taking. He did not actually help load the barrels on to the wagon, but he was by, consented by his manner and, when the accused was ready to go, helped him arrange his wagon and inquired what was to be done with the fourth barrel. The accused replied that he wanted it marked and sent up to him with a bill. He told the platform boss that he ordered the stuff the night before through Dolan. He took full possession of the three barrels of meat with intent to deprive the owner permanently thereof and without compensating it therefor, wholly in ignorance, however, of the fact that Dolan had acted in the matter on behalf of such owner and that it had knowingly aided in carrying out the plan for obtaining the meat.

For the plaintiff in error there was a brief by *Blenski & Cordes,* attorneys, and *Lenicheck, Fairchild & Boesel,* of counsel, and oral argument by *E. T. Fairchild.* They contended, *inter alia,* that there is a difference between a case where the owner of goods sets a trap to catch a thief, merely leaving the goods exposed in order that they may be taken, and the case where the owner, by his agent or otherwise, solicits a person suspected of an intention to steal to come forward and commit

the criminal act. In the latter case the taking is with the consent of the owner, and therefore does not constitute larceny. 18 Am. & Eng. Ency. of Law (2d ed.) 472; *Love v. People,* 160 Ill. 501, 32 L. R. A. 139; *Connor v. People,* 18 Colo. 373, 25 L. R. A. 341, and note; *Comm. v. Hollister,* 157 Pa. St. 13, 25 L. R. A. 349; *State v. Adams,* 115 N. C. 775; *Saunders v. People,* 38 Mich. 218, 220; *People v. Mc-Cord,* 76 Mich. 200.

For the defendant in error there was a brief by the *Attorney General* and *A. C. Titus,* assistant attorney general, and oral argument by *Mr. Titus.* They contended, *inter alia,* that the act on the part of the prosecutor in setting out the goods upon the platform was only facilitating a plan the defendant had previously devised for getting hold of the property. Such act did not amount to a consent to the taking of the property of the prosecutor. *People v. Hanselman,* 76 Cal. 460; *Dodge v. Brittain,* Meigs, 84; *Varner v. State,* 72 Ga. 745; *Rex v. Egginton,* 2 Leach C. C. 913; *Reg. v. Williams,* 1 C. & K. 195; *Rex v. Norden,* 2 East P. C. 666; *King v. Whittingham,* 2 Leach C. C. 912; *Comm. v. Nott,* 135 Mass. 269; *State v. Jansen,* 22 Kan. 498; *Pigg v. State,* 43 Tex. 108; *Thompson v. State,* 18 Ind. 386; 1 Wharton, Crim. Law, sec. 917.

Marshall, J. Evidence was allowed of a hearsay character that the accused, prior to the occurrence in question, had been a party to criminally appropriating property of the packing company. Mr. Layer was permitted to testify that the accused at one time conspired with Peter Juston to so obtain some of its property and succeeded in that regard as said Juston informed the witness, and as was indicated by the books kept by Juston and papers manipulated by the latter. Juston was permitted to testify to such unlawful appropriation of property so far as the purpose of the accused had to do with the transaction. Mere hearsay evidence, subject to some

exceptions not important here, is never allowable and the admission of it is presumed to be prejudicial, unless the contrary clearly appears.   Again, on the trial of a person for a particular offense evidence tending to prove that he has committed other distinct offenses is incompetent and generally prejudicial.   *Albricht v. State,* 6 Wis. 74; *Fossdahl v. State,* 89 Wis. 482, 62 N. W. 185; *Boldt v. State,* 72 Wis. 7, 38 N. W. 177; *Paulson v. State,* 118 Wis. 89, 98, 94 N. W. 771; *Barton v. Bruley,* 119 Wis. 326, 96 N. W. 815; *Holmes v. State,* 124 Wis. 133, 102 N. W. 321.

When a person is charged with being guilty of a particular offense he has a right, which should not be trespassed upon at all, to have the evidence in support of such charge confined to that particular offense.   That, of course, has nothing to do with the rule allowing evidence of a former conviction as bearing on the subject of credibility of the accused in case of his offering himself as a witness, nor the rule permitting proof of other offenses so intimately connected with the one charged as to be evidentiary of the intent essential.   Cases of the latter character too often lead to the improper admission of evidence contrary to the general rule above stated.

Notwithstanding the foregoing the admission of the improper evidence does not give cause for a reversal here.   In a case tried by the court the admission of improper evidence is to be regarded on appeal as having been harmless, unless it clearly appears that but therefor the finding would probably have been different.   *Harrigan v. Gilchrist,* 121 Wis. 127, 314, 99 N. W. 909.   We are unable to see any clear indication that the plaintiff in error was prejudiced by the error in this case.   If the judgment is fatally tainted with error the fault lies in a misconception of the law as regards trespass being essential to the crime of larceny or as to, under what circumstances, in regard to the conduct of the owner of the subject of the larceny, such element does not exist.

It was frankly conceded on the oral argument by the

learned attorney general that if the plaintiff in error committed the crime of larceny Dolan, the decoy of the packing company, was a guilty participant in the matter, unless the element of guilt on his part was absent, because, while in the transaction he acted ostensibly as an accomplice of the accused, his acts were in fact those of the packing company. So in the circumstances characterizing the taking of the barrels of meat from the loading platform the case comes down to this: If a person procures another to arrange with a third person for the latter to consummate, as he supposes, larceny of the goods of such person and such third person in the course of negotiations so sanctioned by such person suggests the plan to be followed, which is agreed upon between the two, each to be an actor in the matter, and subsequently that is sanctioned secretly by such person, the purpose on the part of the latter being to entrap and bring to justice one thought to be disposed to commit the offense of larceny, and such person carries out a part of such plan necessary to its consummation assigned to such other in the agreement aforesaid, such third person not knowing that such person is advised of the impending offense, and at the finality causes one of its employees to, tacitly at least, consent to the taking of the goods, not knowing of the real nature of the transaction, is such third person guilty of the crime of larceny, or does the conduct of such person take from the transaction the element of trespass or nonconsent essential to such crime?

It will be noted that the plan for depriving the packing company of its property originated with the accused, but that it was wholly impracticable of accomplishment without the property being placed on the loading platform and the accused not being interfered with when he attempted to take it. When Dolan agreed to procure such placing the packing company in legal effect agreed thereto. Dolan did not expressly consent, nor did the agreement he had with the packing company authorize him to do so, to the misappropriation

of the property. Did the agreement in legal effect with the accused to place the property of the packing company on the loading platform, where it could be appropriated by the ac-·cused, if he was so disposed and was not interfered with in so doing, though his movements in that regard were known to the packing company, and his taking of the property, his efforts to that end being facilitated as suggested, constitute consent to such appropriation?

The case is very near the border line, if not across it, between consent and nonconsent to the taking of the property. In *Reg. v. Lawrance,* 4 Cox C. C. 438, it was held that if the property was delivered by a servant to the defendant by the master's direction the offense cannot be larceny, regardless of the purpose of the defendant. In this case the property was not only placed on the loading platform, as was usual in delivering such goods to customers, with knowledge that the accused would soon arrive, having a formed design to take it, but the packing company's employee in charge of the platform, Ernst Klotz, was instructed that the property was placed there for a man who would call for it. Klotz from such statement had every reason to infer, when the accused arrived and claimed the right to take the property, that he was the one referred to and that it was proper to make delivery to him and he acted accordingly. While he did not physically place the property, or assist in doing so, in the wagon, his standing by, witnessing such placing by the accused, and then assisting him in arranging the wagon, as the evidence shows he did, and taking the order, in the usual way, from the accused as to the disposition of the fourth barrel, and his conduct in respect thereto, amounted, practically, to a delivery of the three barrels to the accused.

In *Rex v. Egginton,* 2 B. & P. 508, we have a very instructive case on the subject under discussion here. A servant informed his master that he had been solicited to aid in robbing the latter's house. By the master's direction the

servant opened the house, gave the would-be thieves access thereto, and took them to the place where the intended subject of the larceny had been laid in order that they might take it. All this was done with a view to the apprehension of the guilty parties after the accomplishment of their purpose. The servant by direction of the master not only gave access to the house but afforded the would-be thieves every facility for taking the property, and yet the court held that the crime of larceny was complete, because there was no direction to the servant to deliver the property to the intruders or consent to their taking it. They were left free to commit the larceny, as they had purposed doing, and the way was made easy for them to do so, but they were neither induced to commit the crime, nor was any act essential to the offense done by any one but themselves.

In harmony with the case last discussed, in *Williams v. State,* 55 Ga. 391, cited by counsel for the plaintiff in error, it was held that the owner of property may make everything ready and easy for a larceny thereof by one purposing to steal the same, and then remain passive, allowing the would-be criminal to perpetrate the offense of larceny as to every essential part of such offense, without sacrificing the element of trespass or nonconsent; but if one ostensibly acting as an accomplice, but really for the owner of the property, for the purpose of entrapping the would-be criminal, does acts amounting to the constituents of the crime of larceny, although the accused concurred in and supposed he prompted the act, he is not guilty of larceny. The circumstances of that case were these: The would-be criminal when he took the property supposed he was committing the offense of larceny and that his associate was criminally participating therein, but because, as a fact, such person was acting by direction of the owner, and actually placed the property in the hands of the taker, the element of nonconsent essential to larceny did not characterize the transaction. A distinc-

tion was drawn between one person inducing another to commit the crime of larceny of the former's goods or such person aiding in the commission of the offense, so far as the mental attitude of such other is concerned, by doing some act essential to such an offense, and merely setting a trap to catch a would-be criminal by affording him the freest opportunity to commit the offense. The latter does not sacrifice the element of nonconsent. *State v. Jansen,* 22 Kan. 498; *Varner v. State,* 72 Ga. 745; *State v. Duncan,* 8 Rob. (La.) 562; *Reg. v. Williams,* 1 C. & K. 195; *Rex v. Egginton,* 2 B. & P. 508.

In the case before us the owner of the property through its agent, Dolan, did not suggest the plan for committing the offense of larceny, which was finally adopted, but the evidence shows, conclusively, that by the consent or direction of the packing company, through words or otherwise, he suggested the commission of such offense and invited from the accused plans to that end. The fair construction of the evidence is that in the finality the plan was a joint creation of the two and that it required each to be an active participant in its consummation. It seems that there is good reason for holding that the situation in that respect falls within the condemnatory language in the opinion of the court in *Love v. People,* 160 Ill. 501, 43 N. E. 710, cited to our attention by counsel for the plaintiff in error. That will be apparent from the closing words of the opinion, which are as follows:

"A contemplated crime may never be developed into a consummated act. To stimulate unlawful intentions for the purpose and with the motive of bringing them to maturity so the consequent crime may be punished, is a dangerous practice. It is safer law and sounder morals to hold, where one arranges to have a crime committed against his property or himself, and knows that an attempt is to be made to encourage others to commit the act by one acting in concert with such owner, that no crime is thus committed. The owner and his agent may wait passively for the would-be criminal to perpe-

trate the offense, and each and every part of it, for himself,
but they must not aid, encourage, or solicit him that they
may seek to punish."

We cannot well escape the conclusion that this case falls
under the condemnation of the rule that where the owner of
property by himself or his agent, actually or constructively,
aids in the commission of the offense, as intended by the
wrongdoer, by performing or rendering unnecessary some
act in the transaction essential to the offense, the would-be
criminal is not guilty of all the elements of the offense. Here
Mr. Layer, acting for the owner of the property, packed or
superintended the packing of the four barrels of meat as sug-
gested by the owner's agent in the matter, Dolan, and caused
the same to be placed on the platform, knowing that the ac-
cused would soon arrive to take them, under an arrangement
between him and its agent, and directed its platform boss,
when he inquired as to the purpose of so placing the barrels,
"Let them go; they are for some man and he will call for
them." He, from the standpoint of such employee, directed
the latter to deliver the barrels to the man when he called,
the same in all respects as done in *Williams v. State,* 55 Ga.
391. He substantially made such delivery, by treating the
accused when he arrived upon the scene as having a right
to take the property. In that the design to trap a criminal
went a little too far, at least, in that it included the doing of
an act, in effect preventing the taking of the property from
being characterized by an element of trespass.

The logical basis for the doctrine above discussed is that
there can be no larceny without a trespass. So if one pro-
cures his property to be taken by another intending to com-
mit larceny, or delivers his property to such other, the latter
purposing to commit such crime, the element of trespass is
wanting and the crime not fully consummated however plain
may be the guilty purpose of the one possessing himself of
such property. That does not militate against a person's be-
ing free to set a trap to catch one whom he suspects of an in-

Topolewski v. State, 130 Wis. 244.

tention to commit the crime of larceny, but the setting of such trap must not go further than to afford the would-be thief the amplest opportunity to carry out his purpose, formed without such inducement on the part of the owner .of the property, as to put him in the position of having consented to the taking.   If I induce one to come and take my property and then place it before him to be taken, and he takes it with criminal intent, or if knowing that one intends to take my property I deliver it to him and he takes it with such intent, the essential element of trespass involving nonconsent requisite to a completed offense of larceny does not characterize the transaction, regardless of the fact that the moral turpitude involved is no less than it would be if such essential were present.   Some writers in treating this subject give so much attention to condemning the deception practiced to facilitate and encourage the commission of a crime by one supposed to have such a purpose in view, that the condemnation is liable to be viewed as if the deception were sufficient to excuse the would-be criminal, or to preclude his being prosecuted; that there is a question of good morals involved as to both parties to the transaction, and that the wrongful participation of the owner of the property renders him and the public incapable of being heard to charge the person he has entrapped with the offense of larceny.   That is wrong. It is the removal from the completed transaction, which from the mental attitude of the would-be criminal may have all the ingredients of larceny, from the standpoint of the owner of the property, of the element of trespass or nonconsent. When such element does not characterize a transaction involving the full offense of larceny so far as concerns the mental purpose of such would-be criminal is concerned, is often not free from difficulty and courts of review should incline quite strongly to support the decision of the trial judge in respect to the matter and not disturb it except in a clear case.   It seems that there is such a case before us.

If the accused had merely disclosed to Dolan, his ostensible

accomplice, a purpose to improve the opportunity when one should present itself to steal barrels of meat from the packing company's loading platform, and that had been communicated by Dolan to the company and it had merely furnished the accused the opportunity he was looking for to carry out such purpose, and he had improved it, the situation would be quite different. The mere fact that the plan for obtaining the property was that of the accused, under the circumstances of this case, is not controlling. Dolan, as an emissary of the packing company, as we have seen, was sent to the accused to arrange, if the latter were so disposed, some sort of a plan for taking some of the company's property with the intention of stealing it. Though the accused proposed the plan Dolan agreed to it, which involved a promise to assist in carrying it out, ostensibly as an accomplice, but actually as an instrument of the packing company. That came very near, if it did not involve, solicitation by the company, in a secret way, for the accused to take its property as proposed. With the other element added of placing such property on the loading platform for the accused to take pursuant to the agreement, with directions, in effect, to the person in charge of the platform, to let the accused take it when he came for that purpose, we are unable to see any element of trespass in the taking which followed. The packing company went very significantly further than the owner of the property did in *Rex v. Egginton,* 2 B. & P. 508, which is regarded as quite an extreme case. It solicited the opportunity to be an ostensible accomplice in committing the offense of larceny instead of being solicited in that regard, and the property was in practical effect delivered to the would-be thief instead of its being merely placed where he could readily trespass upon the rights of the packing company by taking it. When one keeps in mind the plain distinction between merely furnishing opportunity for the execution of a formed design to commit larceny and negotiations for the purpose of developing

a scheme to commit the offense, regardless of who finally proposes the plan jointly adopted, and not facilitating the execution of the plan by placing the property pursuant to the arrangement where it can readily be taken, but in practical effect, at least, delivering the same into the possession of the would-be thief, one can readily see that the element of trespass, involving consent, is present in the first situation mentioned and not in the last, and that the latter pretty clearly fits the circumstances of this case.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.