STATE, Plaintiff-Respondent, v. BROWN,
Defendant-Appellant.†

Court of Appeals, District I

*No. 77–475–CR. Argued August 9, 1978.—*
*Decided September 7, 1978.*
(Also reported in 270 N.W.2d 87.)

† Petition to review granted.

For the defendant-appellant there were briefs and oral argument by *Charles Bennett Vetzner*, assistant state public defender.

For the plaintiff-respondent, the cause was argued by *Pamela Magee-Heilprin*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

Before DECKER, C. J., CANNON, J., and MOSER, J.

CANNON, J. The defendant, Charles E. Brown, was convicted of armed robbery on July 19, 1973 and was sentenced to the Wisconsin State prison system for an indeterminate term not to exceed 25 years. Facts necessary to the resolution of this appeal are basically uncontested and are as follows:

On November 8, 1972, Ruth Howland, a co-manager of Camelot East Apartment House in Milwaukee, and her

sister-in-law were visited by two men who claimed they were interested in renting an apartment. After being shown an apartment the two men returned to Ruth Howland's apartment, where one of the men put a handgun to her temple and demanded money. After giving him some money, Ruth Howland was pushed into her bedroom, where she was tied up and her room ransacked before the men left.

In addition to money, Ruth Howland testified that other items, including a Panasonic radio, were missing after the men departed. Defendant was arrested for the crime three days later and charged with armed robbery.

At the trial the defendant attempted to introduce the testimony of James Melvin Holmes, Jr. During an offer of proof, Holmes testified that he had met the defendant as they were handcuffed together awaiting court appearances the previous day. Holmes and Brown were together at that time for a period estimated at one hour.

Holmes testified that either the day of or the day after the robbery, he was visited by Marvin Chiles and Alfred Willis. He had known Willis for about two or three weeks. Willis wanted Holmes to buy a Panasonic radio system, which Willis claimed they had just "ripped off" in Camelot East from a woman who was supposed to be the manager and another girl. Holmes stated he bought the Panasonic radio, but claimed it was subsequently stolen from his apartment.

The witness did not know the whereabouts of Chiles or Willis. The defense counsel noted their names were not listed in the phone directory. Holmes claimed he was living with his girlfriend, Sue Tomachefski (phonetic), when he purchased the Panasonic radio. However, he did not know her address or whereabouts at the time of the trial. After hearing argument from both sides, the court rejected the offer of proof because it was hearsay and inherently untrustworthy.

At the trial the defense called Johanie Towns, a waitress, who testified that the defendant was in her

restaurant talking to her during the time of the robbery. During cross-examination, the prosecutor asked certain questions which indicated that Towns was testifying to facts differently than she had stated them to him the day prior. The defense counsel objected to the prosecutor's statements and moved for a mistrial. The judge denied the motion and instructed the jury to disregard the prosecutor's statements regarding Towns' testimony.

Four issues are considered by this court on appeal:

1. Was it a violation of defendant's state and federal due process rights to exclude Holmes' testimony?

2. Did exclusion of Holmes' testimony violate defendant's right to equal protection?

3. Did the questioning of Johanie Towns by the prosecutor violate the defendant's right to a fair trial and right to confront witnesses?

4. Did the cumulative effect of the exclusion of Holmes' testimony and the prosecutor's comments concerning Johanie Towns' testimony violate defendant's right to a fair trial?

The issues will be considered in order.

## DUE PROCESS

The greater portion of Holmes' testimony was concerned with what a third party allegedly told him. This is a classic example of hearsay. *In Re Sawyer's Petition,* 229 F.2d 805 (7th Cir. 1956). Hearsay is generally inadmissible unless it falls under one of its many exceptions. See sec. 908.02, Stats. The defendant contended that the statements of Chiles and Willis, although hearsay, were still properly admissible as statements against their penal interest. Such an exception to the hearsay rule presently exists in the Wisconsin Rules of Evidence, sec. 908.045 (4), Stats. However these rules, a codification of the common law rules of evidence, became effec-

tive January 1, 1974 and applied only to actions then pending or commenced thereafter. *State v. Johnson,* 60 Wis.2d 334, 210 N.W.2d 735 (1973). The defendant in the case at bar was tried and convicted in 1973. In such cases the court has held:

" '[T]he hearsay statements . . . are inadmissible since the hearsay exception does not apply prior to January 1, 1974, to declarations against penal interest.' " *State v. Sharlow,* 61 Wis.2d 388, 395, 212 N.W.2d 591 (1973).

Since no exception to the hearsay rule is available here, the testimony would normally be excluded under state evidentiary rules, *Topolewski v. State,* 130 Wis. 244, 109 N.W. 1037 (1906).

However, the United States Supreme Court ruled in *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973), that:

"[W]here constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice. *Cf. Wirth v. State,* 55 Wis.2d 11, 197 N.W.2d 731 (1972)."

In *Chambers,* the Supreme Court held that where hearsay testimony bore persuasive assurances of trustworthiness and was critical to the defense, due process demands that such testimony be admitted, even though it would technically be excluded by state hearsay statutes.

The defendant contends that his state and federal due process rights to present a defense were violated by the exclusion of Holmes' testimony. The due process clause of the Wisconsin constitution contained in Article One, §1 is substantially equivalent to the due process clause of the Fourteenth Amendment to the federal constitution. *Boden v. Milwaukee,* 8 Wis.2d 318, 99 N.W.2d 156 (1959) ; *State ex rel. Sonneborn v. Sylvester,* 26 Wis.2d 43, 132 N.W.2d 249 (1965). It has been noted that:

"The constitutional guarantee of due process of law is intended to protect the individual against the arbitrary exercise of government power. . . ." *La Porte v. Bitker,* 55 F. Supp. 882, 886 (E.D. Wis. 1944).

Under the federal due process clause, "the State owes to each individual that process which, in light of the values of a free society, can be characterized as due." *Boddie v. Connecticut,* 401 U.S. 371, 380 (1971).

The defendant relies extensively on *Chambers* for this appeal. In that case the defendant in a murder trial sought to prove his innocence by presenting the testimony of three witnesses who were told individually by another man, McDonald, that he had committed the crime in question. The evidence further disclosed that, (1) McDonald had signed a confession to the murder (which he later repudiated), (2) that a witness had seen McDonald with a gun shortly after the murder, and (3) that McDonald owned a .22 caliber revolver, the type of weapon which caused the victim's death. However, the trial court refused to allow the three witnesses to testify because Mississippi law, like Wisconsin's prior to 1974, did not recognize a hearsay exception for statements by a third party declarant against penal interest.

The trial court also ruled that the defense could not cross-examine McDonald, who was present in the courtroom. The court premised its ruling on Mississippi's "voucher rule," which prohibited impeachment of one's own witness. Consequently, neither McDonald's nor the three witnesses' testimony was admitted at trial. The defendant was found guilty as charged. On appeal, the Mississippi Supreme Court upheld the trial court's evidentiary rulings.

However, the United States Supreme Court reversed the judgment of the Mississippi Supreme Court, holding that:

". . . under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Chambers, supra* at 303.

The court noted that certain assurances of trustworthiness must be present if hearsay testimony concerning a third party's statement against penal interest is to be admitted. The facts of the case were evaluated in the context of four specific criteria:

1. time of the statement and the party to whom the statement was made;

2. existence of evidence corroborating the statement;

3. extent to which the statement is self-incriminating and against penal interest;

4. presence of declarant in courtroom to testify if necessary.

Using these criteria, the court found the testimony of the three witnesses was supported by a sufficient indicia of reliability to require admission.

In applying these criteria to the instant case, a few factors exist which lend some credibility to Holmes' testimony. The statements of Chiles and Willis were, like those made by McDonald, against their penal interest. Also, their statements were purportedly made to Holmes within a day after the robbery occurred.

However, the remaining factors in the case tend to deprecate the reliability of Holmes' testimony. First, there exists absolutely no evidence to corroborate Holmes' testimony. In *Chambers* there were at least three instances where independent testimony and evidence corroborated McDonald's statements. Defendant argues that since the declarants allegedly possessed a Panasonic radio and allegedly told Holmes essential facts about the robbery which were substantiated at trial, sufficient corroboration to assure trustworthiness existed under

the *Chambers* guidelines. In essence the defendant wishes us to accept the argument that the statements of Chiles and Willis sufficiently corroborate themselves without resorting to independent substantiation. Such argument twists the logic of *Chambers* and is rejected.

Second, the statements of Chiles and Willis were made not to three close friends as in *Chambers*, but to only one man, Holmes. Holmes had known Willis prior to buying the radio for only a period of a few weeks. No evidence existed concerning whether he knew Chiles previous to that time.

Third, the declarants, unlike McDonald in *Chambers*, were not available in the courtroom to testify. In fact, except for Holmes' testimony, there was no proof at trial that the declarants even existed.

Additional factors also undermined the reliability of Holmes' testimony. Holmes admitted that he was presently serving a jail sentence for armed robbery.

"The fact of prior convictions . . . is relevant evidence because the law in Wisconsin presumes that one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted." *Nicholas v. State*, 49 Wis.2d 683, 688, 183 N.W.2d 11 (1971).

This factor could be weighed by the trial judge.

Testimony further showed that Chiles and Willis were nowhere to be found. The Panasonic radio, allegedly stolen from Holmes' apartment, was unlocated. Finally, Holmes' girlfriend, who might have verified that Holmes bought a Panasonic radio from Chiles and Willis, did not testify. Holmes stated he did not know of her whereabouts.

By his testimony, Holmes admitted to receiving stolen property because he allegedly bought a stolen radio from

Chiles and Willis. Defendant contends this admission against penal interest greatly enhanced the reliability of Holmes' testimony.

At the time of the trial, Holmes was serving a term for armed robbery in the Wisconsin prison system. Furthermore, Holmes had stated that the radio in question had been stolen from his apartment. Its location was unknown. Under these circumstances, the possibility that a prosecutor would bother to charge him with receiving stolen property is very questionable. Such exposure was certainly not devastating to Holmes' penal interest. Consequently, this contention cannot be given great weight by this court.

In delineating a standard by which a trial court should evaluate the admission of hearsay testimony, one court noted:

"The determination whether corroborating circumstances clearly indicate the trustworthiness of a third party confession lies within the sound discretion of the trial court, which is aptly situated to weigh the reliability of the circumstances surrounding the declaration, and this Court will review the exclusion of [a third party confession] only for an abuse of discretion." *United States v. Guillette*, 547 F.2d 743, 754 (2nd Cir. 1976).

The trial judge conducted the offer of proof concerning Holmes' testimony. He was, therefore, in the best position to view the demeanor of the witness and to determine whether his testimony was reliable. He specifically found that:

"[N]ot only is [the] necessary corroboration [for Holmes' testimony] lacking, but . . . my analysis of the testimony of the witness . . . is [that it is] inherently . . . unworthy of belief and testimonially untrustworthy under all of the circumstances presented. . . ."

We hold the trial judge did not abuse his discretion nor violate the due process rights of the defendant by excluding Holmes' testimony.

In so ruling, we are aware that the defendant's right to present witnesses in his own behalf is one of the most precious and fundamental of all constitutional rights. However,

"In the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers, supra* at 302.

Accordingly, our decision is based neither on a mechanical application of the hearsay rule nor on an absolute deference to the right of a defendant to present witnesses in his own defense, but rather on a conscientious balancing of all the salient factors involved in this particular case. On that basis, defendant's contention that his due process rights were violated cannot withstand scrutiny. Although critical to the defense, the testimony rejected by the trial court simply did not bear a sufficient indicia of reliability and trustworthiness to allow its admission.

## EQUAL PROTECTION

The defendant's equal protection argument as it relates to this case is ambiguous. As best we can ascertain, the defendant contends his equal protection rights were violated when the trial court required an initial showing of reliability before Holmes' testimony could be admitted. Defendant asserts that if Holmes' testimony would have tended to prove the defendant's guilt rather than to exculpate him, it would have been automatically admitted without a preliminary showing of trustworthiness.

We do not agree that hearsay testimony by Holmes would have been automatically admitted without an offer of proof if the testimony tended to inculpate the defendant. Hearsay is hearsay, whether offered by the defense or prosecution. If it does not fit into a hearsay exception, it generally will not be admitted; *Topolewski, supra.*

The cases cited by defendant do not support his allegation of discrimination. *State v. Cartagena,* 40 Wis.2d 213, 161 N.W.2d 392 (1968) did not involve the presentation of hearsay evidence by the prosecution but the impeachment of defense witness by his prior statement. The other case cited for this premise, *Nelson v. State,* 35 Wis.2d 797, 151 N.W.2d 694 (1967), involved use by the prosecution of a witness' testimony which was based on statements made to that witness by the defendant. As such, although hearsay, the statement "constituted an admission against interest on the part of defendant" and was admissible. *Id.* at 807. These cases certainly do not support the defendant's contention that hearsay statements offered by a prosecutor are admissible without a preliminary showing of trustworthiness.

The Wisconsin Supreme Court has noted:

"The aim of the 'equal-protection-of-the-laws' clause is to assure that every person within the state's jurisdiction will be protected against intentional and arbitrary discrimination. . . ." *State ex rel. Murphy v. Voss,* 34 Wis.2d 501, 510, 149 N.W.2d 595 (1967)..

In this case, although discrimination is alleged by the defendant, no discrimination is shown to have existed. We find no denial of equal protection by the trial court's requirement that a preliminary showing of trustworthiness occur before hearsay testimony could be admitted.

## Johanie Towns' Testimony

Next defendant contends that certain questions propounded by the prosecutor to Johanie Towns violated the defendant's right to a fair trial and right to confront witnesses. This question was heard on direct appeal to the Wisconsin Supreme Court and rejected in an unpublished *per curiam* decision on September 30, 1975.

The defense counsel acknowledges in his brief that this issue has been adjudicated previously, but offers it for reconsideration. However, the Supreme Court has held:

"A sec. 974.06 motion is limited in scope to matters of jurisdiction or of constitutional dimensions. The motion must not be used to raise issues disposed of by a previous appeal." *Peterson v. State,* 54 Wis.2d 370, 381, 195 N.W.2d 837 (1972) ; *Cf. Smith v. State,* 63 Wis.2d 496, 217 N.W.2d 257 (1974).

Since this issue has already been adjudicated by the Supreme Court, we refuse to reconsider it on a sec. 974.06 motion.

## Cumulative Effect

Defendant's final contention is that the cumulative effect of the exclusion of Holmes' testimony coupled with the prosecutor's questioning of Johanie Towns deprived the defendant of his right to a fair trial. We have concluded that the exclusion of Holmes' testimony was proper and violated no constitutional rights. The issue concerning the prosecutor's questioning of Johanie Towns has been adjudicated by the Supreme Court. Under

these circumstances, this argument is best answered by the words of Justice Robert Hansen in *Mentek v. State,* 71 Wis.2d 799, 809, 238 N.W.2d 752 (1976) :

"Finally, as has become par for the course, the defendant repeats the arguments earlier made and contends that, taken together, they warrant granting this defendant a new trial in the interest of justice. We have found each of these arguments to be without substance. Adding them together adds nothing. Zero plus zero equals zero."

*By the Court.*—Order affirmed.