Peloquin, Respondent, vs. Hibner and others, Appellants.

*March 7—April 11, 1939.*

82

For the appellants there were briefs by *Bogue, Sanderson & Kammholz* of Portage, and oral argument by *T. C. Kammholz*.

For the respondent there was a brief by *Hill, Miller & Hill* of Baraboo, and oral argument by *James H. Hill, Sr.,* and *James H. Hill, Jr.*

MARTIN, J. Appellants' first contention is that the court erred in denying their motion for judgment dismissing the complaint on the merits notwithstanding the verdict because:

(1) Plaintiff was lawfully taken into custody;

(2) Plaintiff's detention up to the time of questioning by the district attorney was not for an unreasonable period of time; and

(3) Plaintiff agreed to remain in custody without any warrant being issued following the questioning on May 31, 1937.

The jury found that the defendant sheriff had reasonable grounds to believe that plaintiff had participated in the Rio Bank robbery or had knowledge of the plans of others to rob the bank, and had abetted such plans by giving guilty consent thereto; that said sheriff had reasonable grounds to so believe at the time he instructed his undersheriff and deputy, his codefendants in this action, to take the plaintiff and her husband into custody. The plaintiff makes no contention that defendants did not act in good faith, in the honest belief that the plaintiff was involved in the Rio Bank robbery. Plaintiff's counsel concedes that defendants had a right to arrest without a warrant if they had reasonable grounds to believe that a felony had been committed and that plaintiff had participated in such felony. Respondent's counsel argues that there was no arrest; that plaintiff was simply detained for questioning,—hence, there was a false imprisonment because there is no legal right of detention for the mere purpose of questioning. Clearly, what happened constituted an arrest of the plaintiff without a warrant. She was for the time being deprived of her liberty, but by legal authority. What constitutes an arrest is thus defined in 4 Am. Jur. p. 5, § 2:

"An arrest is the taking, seizing, or detaining of the person of another, either by touching or putting hands on him, or by any act which indicates an intention to take him into custody and subjects the person arrested to the actual control and will of the person making the arrest."

The officers who took plaintiff and her husband into custody did so upon instructions from their superior officer, the defendant sheriff, who, at the time, was conducting an investigation of the bank robbery in the northern part of the state. Upon the sheriff's return to Portage with William Peloquin, on Monday evening, May 31st, immediate arrangements were made for the examination of the plaintiff, her husband, and William Peloquin. It appears that following the examinations conducted by the district attorney, their stories were

checked with the information obtained by the sheriff in the northern part of the state. The plaintiff was released from custody between 3 and 3:30 o'clock in the afternoon, on June 1st.

Upon the evidence, under all the circumstances, Is there any credible evidence to sustain the jury's answer to the fifth question of the special verdict? By its answer to this question, the jury found that defendants detained the plaintiff an unreasonable length of time after taking her into custody, before releasing her. We will first consider this phase of the case, without regard to the question of whether plaintiff consented to remain in custody as contended by appellants. In *Geldon v. Finnegan,* 213 Wis. 539, 546, 252 N. W. 369, the trial court gave the following instruction:

" 'The duty of an officer to take a prisoner before a magistrate without unreasonable delay means to take him before such magistrate forthwith, and forthwith usually means instantly or as soon as it is practicable, and is usually construed to mean not longer than twenty-four hours after the arrest.' "

Relative to this instruction, the court said at p. 547:

"We find no authority for the statement that 'forthwith' is usually construed to mean not longer than twenty-four hours after the arrest. *Dickerman v. Northern Trust Co.* 176 U. S. 181, 20 Sup. Ct. 311, does not so hold. While it is cited in *State ex rel. Traister v. Mahoney,* 196 Wis. 113, 219 N. W. 380, it relates to civil procedure and not criminal procedure, and it is so limited in the *Mahoney Case.* No rule of thumb can be made which will fit all cases. 'Forthwith,' like 'reasonable time,' is a term which is dependent upon the circumstances of each case for the interpretation which is to be placed upon it. In some cases it means instanter (*Hull v. Mallory,* 56 Wis. 355, 14 N. W. 374), in others it means a reasonable time (*Rainer v. Schulte,* 133 Wis. 130, 113 N. W. 396). See 26 C. J. p. 997, and cases cited.

"If the plaintiff was being detained for the purpose of arrest, it was the duty of the arresting officer to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit."

With reference to the duty of an officer making an arrest without a warrant, in *Schoette v. Drake,* 139 Wis. 18, 21, 120 N. W. 393, the court said:

"The law upon the subject is well settled to the effect that where an officer makes an arrest without a warrant, as was done in this case, it is his duty to take the person arrested before a magistrate without unreasonable delay." (Citing cases.)

In considering whether there is any evidence to sustain the finding that defendants detained plaintiff an unreasonable length of time, we have the circumstance that she was taken into custody on Sunday evening, May 30th; that the defendant sheriff and his deputies traveled the greater part of Sunday night from Chippewa Falls to Washburn, Wisconsin, for the purpose of taking William Peloquin into custody; that upon the sheriff's arrival in Washburn, sometime Monday forenoon, he immediately started on his return trip to Portage with William Peloquin in custody. It appears that he arrived at Portage at about 7:40 p. m., Monday evening. The sheriff made immediate arrangements with the district attorney of Columbia county to question the plaintiff, her husband, Mike Peloquin, and her brother-in-law, William Peloquin. It further appears that the examinations of the Peloquins were not completed until about 9 o'clock, Monday night. This was the earliest opportunity the sheriff had to obtain statements from the Peloquins and to check their statements with the information he had obtained up to that time relative to the bank robbery. The reasonableness or unreasonableness of the period of detention must be determined from the facts and circumstances in each case. There is no suggestion that the sheriff and the district attorney of Columbia county did not expedite their investigation following the examinations on Monday night, with due diligence and dispatch. The defendants and the district attorney were entitled to a reasonable time on Tuesday, June 1st, as a matter of law,

to determine whether to make a formal complaint against the plaintiff or release her from custody. We are of the view that under the circumstances, we must hold, as a matter of law, that defendants did not unreasonably detain the plaintiff in custody. While this conclusion would necessitate a reversal of the judgment and a dismissal of the action, defendants further contend that plaintiff agreed to remain in custody without any warrant being issued for a period of forty-eight hours and that she was released within that time. The defendants claim they relied upon such consent. It appears that the district attorney, in his questioning of the plaintiff, on Monday evening, asked her the following question:

"Now, we have asked both your husband and his brother this question: Under the law we are required to charge you with some crime if we detain you. We dislike doing that. They have both consented to remain here twenty-four or forty-eight hours while we check and verify the questions we have asked them, and to investigate more fully. Will you consent to do likewise, that is to stay in the custody of the sheriff twenty-four or forty-eight hours without any warrant being issued, while we investigate this matter?"—

to which she replied: "Certainly." Plaintiff admits she was asked the question substantially as indicated, but upon the trial she denied having made the answer, "Certainly." Plaintiff's statement was taken down in shorthand by a court reporter and thereafter transcribed. The transcript of the testimony contains the question and answer as above indicated. The district attorney testified that he asked the question and that the plaintiff's answer was, "Certainly." The court reporter testified that she correctly took down and transcribed the plaintiff's examination and that the question and answer as indicated were correct. The testimony of the court reporter and the district attorney is corroborated by the testimony of seven other witnesses, most of whom could have no possible interest in the outcome of this case. Respondent's counsel, in their statement of facts, referring to the plaintiff's

examination by the district attorney, make the following statement:

"Some twenty-four hours afterward she was first apprised of what the purpose of the incarceration was, and was cross-examined by the district attorney. Thereafter she was advised that unless she would consent to stay an additional twenty-four or forty-eight hours, a warrant for her arrest would be issued, and under those circumstances *she gave* a purported consent to stay an additional period of time."

Also, respondent's counsel contends that:

"Any supposed consent was obtained by duress."

It should be noted that plaintiff does not deny having given her consent to remain in the sheriff's custody for a period of twenty-four or forty-eight hours. She simply denies having made the answer, "Certainly." The contention that her consent was obtained by duress is very significant. There is not a scintilla of evidence to warrant any claim of duress. The only reference to issuing a warrant for plaintiff's arrest is that contained in the question quoted above. In view of the plaintiff's admissions and contentions in the face of the transcript of her statement, corroborated by the testimony of nine witnesses, we must hold that there was no evidence to take the issue of plaintiff's consent to the jury. Upon defendants' motions after verdict, the court should have changed the answers from "Yes" to "No," to the first, second, and fifth questions of the special verdict and ordered judgment in favor of the defendants, dismissing the action.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in favor of the defendants, dismissing the complaint.