HUEBNER, Plaintiff in error, v. STATE, Defendant in error.

*December 2, 1966—January 10, 1967.*

506

508

For the plaintiff in error there were briefs and oral argument by *Robert H. Friebert*, public defender.

For the defendant in error the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *Lee A. Bernsteen*, district attorney of Oneida county.

HALLOWS, J. Huebner raises six issues, but five of them do not have sufficient merit to command a reversal. The first issue is whether the information charged Huebner with a crime. In its material part, the information alleged that "John J. Huebner, did wrongfully, unlawfully and feloniously, attempt to entice a child under the age of 18 years of age into an automobile for immoral purposes, contrary to Section 944.12 Wisconsin Statutes and 939.32 Wisconsin Statutes." Enticing a child into an automobile for immoral purposes has been made a felony by sec. 944.12, Stats.,[1] which provides

---

[1] "944.12 **Enticing a child for immoral purposes.** Any person 18 years of age or over, who, with intent to commit a crime against sexual morality, persuades or entices any child under 18 years of age into any vehicle, building, room or secluded place may be imprisoned not more than 10 years."

for imprisonment not exceeding ten years. An attempt to commit a felony is also a crime and sec. 939.32 (1), provides a penalty of imprisonment not to exceed one half of the maximum penalty for the completed crime.

Huebner challenges the validity of the information on the ground there can be no crime of attempted enticement because sec. 944.12, Stats., is itself an attempt statute. He claims sec. 944.12 is no more than an attempt to commit a crime against sexual morality.

In the Criminal Code, crimes are divided into inchoate and completed crimes and are so designated. Secs. 939.30, 939.31, and 939.32, Stats., which define solicitation, conspiracy, and attempt, respectively, are crimes of an inchoate nature, and most crimes defined in chs. 940 through 947, are completed crimes. Enticing a child for immoral purposes (sec. 944.12) was placed in the latter category. While the placement in the statutes is not controlling, it is of some significance in determining legislative intent. The crime of enticement of a child for immoral purposes is a completed crime by its very definition and not an attempt to commit a crime against sexual morality. And, this is true regardless of whether other crimes can or cannot be combined with the general attempt statute or contain within their definition words of attempt. While some crimes cannot by their nature be combined with the general attempt statute because it would result in a contradiction of terms, 1 Wharton's Anderson, Criminal Law and Procedure (1957), pp. 154, 155, sec. 72, sec. 944.12 is not such a crime. The gravamen of the crime is not the commission of an act against sexual morality, but in succeeding in getting a child under eighteen years of age to enter a vehicle, building, room, or secluded place by enticement or persuasion with intent to commit such a crime. The attempt of this crime is completed when the defendant with the neces-

sary intent tries to persuade or entice the child to get into the vehicle or secluded place.

Furthermore, we question the validity of Huebner's proposition that the state cannot create a crime out of an attempt to attempt a crime. This problem has been considered in connection with attempted assault with a dangerous weapon when the assault is considered an attempted battery and it has been held that such an attempt is a crime. *State v. Wilson* (1959), 218 Or. 575, 346 Pac. (2d) 115; Anno. Attempt to commit assault as criminal offense, 79 A. L. R. (2d) 597. In Wisconsin common-law crimes are abolished and the only crimes are those created as such by the legislature. Consequently, the legislature within constitutional limits may define what acts shall constitute a crime. No constitutional prohibition forbids the legislature from creating a crime of an attempt to attempt a crime if it can otherwise be done. We hold, however, sec. 944.12, Stats., creates a completed crime and is not an attempt statute.

Huebner additionally contends the information does not charge a crime because the charge is not in the words of the statute and the phrase "for immoral purposes" is too vague and indefinite. There is no requirement the information in order to charge a crime must be in the language of the statute. Sec. 955.14, Stats., in part requires only that the crime charged be stated in plain, concise language without unnecessary repetition and contain the name of the defendant and a citation of the statute he is charged with having violated. Sub. (4) provides an information is sufficient after verdict if the crime is described in the words of the statute, but other words conveying the same meaning may be used. We consider the use of "for immoral purposes" instead of the statutory words "against sexual morality" when used in the information in connection with the citation to sec. 944.12 entitled "Enticing a child for immoral pur-

poses" to be sufficient to charge a crime. See *State ex rel. Keehn v. Capelle* (1962), 17 Wis. (2d) 116, 115 N. W. (2d) 487. At most, this information was insufficient in describing and designating the exact crime against sexual morality, and since no objection was made before trial, sec. 955.09 (3) [2] is applicable and the defect was waived.

This section also furnishes the answer to Huebner's objection that the information was defective because it did not allege the name of the victim. Huebner argues the name of the victim is important in an information in order to enable him to prepare his defense and to allow him to plead double jeopardy in the event of a subsequent prosecution. There is no claim Huebner was unable to prepare his defense or was misled and there is no doubt of identity of the victim in the record. Whatever potential difficulty Huebner may have with double jeopardy merely points up the defect. The failure to state the name of a victim in an information charging a sex offense is a defect in form, *State ex rel. Wenzlaff v. Burke* (1947), 250 Wis. 525, 27 N. W. (2d) 475, and should have been objected to prior to trial.

The contentions are made that Huebner's arrest was unconstitutional because it was not based upon probable cause, and the inculpatory oral statements made by him at the police station were inadmissible at the trial because he was not advised by the police of his constitutional rights. The record does not bear out or furnish a basis for either of these contentions. The day after the incident a police officer stopped Huebner's car because it matched the description given to the police by Boote.

[2] "(3) Defenses and objections based on defects in the institution of the proceedings, insufficiency of the information or indictment, invalidity in whole or in part of the statute on which the prosecution is founded, or the use of illegal means to secure evidence (except confessions) must be raised before trial by motion or be deemed waived. . . ."

After learning Huebner had used his car the night before, the officer asked him if he would come down to the station because he wanted to further question him. He was not told he was under arrest nor was he ordered to report to the station and he drove his own car there. He had no understanding he was under arrest, his liberty was not restricted, and the officer had no intention at that time of restraining his liberty.

It is claimed the stopping of the car followed by questioning at the police station constituted an arrest. We think a law-enforcement officer may temporarily stop a person and request him to furnish information, to respond to questions or to appear at the police station without arresting such person or without such requested cooperation being considered an arrest. However, it must be made plain to the person he is not under arrest and there is no legal obligation to comply with the request to appear at the station, and the act of the person must be voluntary and uncoerced. However, if the law-enforcement officer by order or conduct indicates the person is obliged to remain in the officer's presence or to come to the police station, such person is for practical purposes arrested because of the imposition of the will of the police officer over the freedom of the person. The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest. *State v. Phillips* (1952), 262 Wis. 303, 308, 55 N. W. (2d) 384. The same result is reached by a voluntary submission to such custody. But there must exist the intent to take into custody and a corresponding understanding by the person arrested that he is in "custody," although no formal declaration of arrest is required. 5 Am. Jur. (2d), Arrest, p. 695, sec. 1. *Peloquin v. Hibner* (1939), 231 Wis. 77, 84, 285 N. W. 380. For a discussion of Stopping to Question vs. Arrest, see

Dahl & Boyle, Procedure and The Law of Arrest, Search & Seizure, p. 11. This problem is also one of the subjects covered in Draft 1 of the Model Code of Pre-Arraignment Procedures in Criminal Cases of the American Law Institute.

None of these conditions occurred or are inferable from the circumstances in this case until after Huebner had given an oral confession to the police and was told he was under arrest. Consequently the arrest stood on probable cause and not suspicion. *Phillips v. State* (1966), 29 Wis. (2d) 521, 139 N. W. (2d) 41; *State v. Camara* (1965), 28 Wis. (2d) 365, 137 N. W. (2d) 1.

The trial of this case occurred after *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977, but before *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694, and therefore is governed by the *Escobedo* doctrine, which was limited by this court to the facts of that case. *Phillips v. State, supra; Neuenfeldt v. State* (1965), 29 Wis. (2d) 20, 138 N. W. (2d) 252, certiorari denied, 384 U. S. 1025, 86 Sup. Ct. 1973; *State ex rel. Goodchild v. Burke* (1965), 27 Wis. (2d) 244, 133 N. W. (2d) 753, certiorari denied, 384 U. S. 1017, 86 Sup. Ct. 1941; *Browne v. State* (1964), 24 Wis. (2d) 491, 129 N. W. (2d) 175, certiorari denied, 379 U. S. 1004, 85 Sup. Ct. 730, 13 L. Ed. (2d) 706.

When Huebner arrived at the police station, the officer informed him of the complaints which had been received. Huebner was told that anything he said could be used against him and that he had a right to counsel. He was also told the exact nature of the alleged offense and the statute was read to him. The officer then asked if the complaints were true and when Huebner expressed concern about the penalty the officer read that from the statute book. Huebner stated he wanted to talk to his wife, but before doing so admitted the complaints were

true with a minor qualification. He then spoke to his wife.

Since the crime was committed outside of the city of Rhinelander, the Oneida county undersheriff was called to the station. He also advised Huebner of his right to remain silent and his right to counsel. However, Huebner admitted he had committed the offense which involved Boote. The undersheriff suggested to the defendant that because of the seriousness of the offense he should call an attorney. Huebner declined a request to give a signed statement before consulting with his attorney. On this record, there was compliance with *Escobedo* as applied in this state at that time.

The next contention of Huebner is based on an alleged duty of the trial judge to make a specific finding that the inculpatory oral statements were made voluntarily and not obtained in violation of his constitutional rights. Huebner relies upon *Jackson v. Denno* (1964), 378 U. S. 368, 84 Sup. Ct. 1774, 12 L. Ed. (2d) 908. However, *Denno* is not entirely applicable because this case was tried to the court, not to a jury. In a trial to the court the trial judge must be satisfied the confessions or admissions of guilt are voluntary before he can consider them in the fact-finding process and when any doubt is raised or an objection to their admissibility is made, the court must formally determine and rule on their admissibility. Absent an objection to the admissibility of a confession, the court without a jury is not required *sua sponte* to rule or hold a hearing on admissibility.

Of course, if the trial is to the jury the procedure required by *Jackson v. Denno* and *State ex rel. Goodchild v. Burke, supra,* must be followed when the issue of admissibility arises unless waived as a matter of trial strategy. We recognized in *Gauthier v. State* (1965), 28 Wis. (2d) 412, 137 N. W. (2d) 101, and *Topolewski v. State* (1906), 130 Wis. 244, 109 N. W. 1037, that the

technique of handling the admissibility of evidence in a trial to the court and the result of its erroneous admission are not necessarily the same as in a jury trial. In the present record there was no request for a hearing on voluntariness or an objection to the admissibility of the oral statements on the ground they were involuntary or coerced in any sense, and there is no dispute in the evidence to suggest any involuntariness or coercion. Even on this appeal, Huebner does not claim that any inculpatory oral statements he made to the police were given involuntarily. We hold the trial court was not required to make a specific finding of voluntariness *sua sponte*.

Huebner strenuously argues there is not sufficient evidence to sustain the conviction. He claims his activities consisted of no more than engaging in obscene conversation with Boote, he did no overt act to force him into the car, and there were no unequivocal acts showing an intention to engage in sodomy. We need not recount the sordid evidence. The crime charged was an attempt to persuade or entice a child under eighteen years of age into the vehicle with intent to commit a crime against sexual morality. There is no question of Huebner's intent and willingness to commit sodomy. There is no question Boote was under eighteen years of age. The only real issue is whether Huebner's words or conversation constituted an attempted persuasion or enticement to get Boote into the car. Factually, the record shows persistent acts of both persuasion and enticement. Since the evidence in the record which was believed and rationally considered by the trial judge was sufficient to prove Huebner guilty beyond a reasonable doubt, the conviction will not be upset. *Lock v. State* (1966), 31 Wis. (2d) 110, 142 N. W. (2d) 183; *State v. Stevens* (1965), 26 Wis. (2d) 451, 132 N. W. (2d) 502; *State v. Johnson* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379.

But it is claimed there is no completed attempt because the persuasion and enticement were unsuccessful. Under sec. 939.32 (2), Stats.,[3] the only element of attempt for consideration on the record is whether Huebner would have committed the crime of enticing Boote to enter the car for immoral purposes "except for the intervention of another person or some other extraneous factor." We think this requirement applies to the crime involving persuasion or enticement but perhaps not as clearly as to a crime wholly within the power of the actor to commit. Since all attempts to commit crimes are failures to do so, a failure excuses a defendant who attempts a crime only when his actual attempt is incomplete, rather than unsuccessful. Within the contemplation of this section an attempt is complete when the defendant, with intent to commit a crime, takes action in furtherance of such intent and the failure to accomplish the crime is due to a factor beyond his control or one unknown to him. *State v. Damms* (1960), 9 Wis. (2d) 183, 100 N. W. (2d) 592; *Le Barron v. State* (1966), 32 Wis. (2d) 294, 145 N. W. (2d) 79.

We think here the moral strength and the resistance of Boote to the entreating and enticing of Huebner constituted an extraneous factor beyond Huebner's control which prevented him from successfully persuading or enticing Boote to get into the car. Huebner did everything in his power to persuade and entice Boote into his car for the expressed purpose of committing an act of sexual perversion. Huebner did not abandon Boote; Boote abandoned Huebner. The failure of Boote to get

---

[3] "939.32 Attempt. . . .

"(2) An attempt to commit a crime requires that the actor have an intent to perform acts and attain a result which, if accomplished, would constitute such crime and that he does acts toward the commission of the crime which demonstrate unequivocally, under all the circumstances, that he formed that intent and would commit the crime except for the intervention of another person or some other extraneous factor."

into the car for such purpose is to his credit and not due to the withdrawal in any sense by Huebner of his enticement. Anything more would have been the completed crime of enticement under sec. 944.12, Stats. Whether a crime against sexual morality is actually committed is of no concern of this section. This type of an attempt is completed even though it fails solely because of mental resistance of the victim. *People v. Fulton* (1961), 188 Cal. App. (2d) 105, 10 Cal. Rptr. 319. See also Sayre, Criminal Attempts, 41 Harvard Law Review (1928), 821, 847; Perkins, Criminal Attempt and Related Problems, 2 U. C. L. A. Law Review (1954), 319, 354.

The last contention of Huebner, and one which we think has merit, urges a constitutional invalidity of the statutory procedure under which he was committed to the department as a sex deviate for treatment at its sex deviate facility under the Sex Crimes Act rather than being sentenced to prison for his crime under criminal law. This act was held constitutional in *State ex rel. Volden v. Haas* (1953), 264 Wis. 127, 58 N. W. (2d) 577, against the claims the act operated to deprive one of his liberty without due process and was an illegal delegation of judicial power to the administrative agency.

The purpose of the Sex Crimes Act commonly known as the "Sex Deviate Law" is to protect society from the commission of dangerous sex crimes and to provide treatment for the dangerous sex offender. Because of lack of treatment facilities and of methods of treatment, and on policy grounds, a distinction was made between relatively nondangerous and dangerous sexual deviates, which is reflected in the mandatory and permissive presentence examination. Note, Criminal Law—Wisconsin's Sexual Deviate Act, 1954 Wisconsin Law Review, 324.

The Sex Crimes Act was enacted by ch. 542, sec. 2, Laws of 1951, and presently provides in sec. 959.15 (1) Stats., that upon conviction of rape, sexual intercourse without consent, indecent behavior with a child, or for

attempted rape or sexual intercourse without consent, a temporary commitment of a defendant to the state department of public welfare for a presentence social, physical and mental examination is mandatory. Upon conviction for other sex crimes, such presentence examination is discretionary with the trial court. Other unspecified sex crimes are those commonly so considered and include any other crime excepting homicide or attempted homicide which the court finds a defendant was probably directly motivated to commit by a desire for sexual excitement in its commission, sec. 959.15 (2). We think the statute is plain the sexual excitement must be in the commission of the crime of which the defendant is convicted and the desire be a probable direct motive. If it is necessary in order to make such a finding, a court may take testimony after conviction. This definition of "sex crimes" was not in this section at the time we held in *Wood v. Hansen* (1954), 268 Wis. 165, 66 N. W. (2d) 722, that disorderly conduct was not a sex crime.

Huebner was committed for a presentence examination under this permissive section and the commitment for this purpose has not been questioned.

Upon a completion of the examination but not later than sixty days after commitment, a report of the examination with the recommendations of the department is sent to the court. If it appears from such report that the department does not recommend specialized treatment for the defendant's mental and physical aberrations, the defendant is sentenced for the crime on a punitive basis as any other criminal, sec. 959.15 (5), Stats. However, if the department recommends specialized treatment, it is mandatory for the court under sec. 959.15 (6), to either place the defendant on probation under the control and supervision of the department with the requirement he receive such inpatient or outpatient treatment as the court shall prescribe, or to commit the defendant to the department for care as an inpatient at the sex deviate

facility. Under the authority conferred by this section, Huebner was committed to the state department of public welfare. He could not have been sentenced to penal punishment; that was settled in *State ex rel. Copas v. Burke* (1965), 28 Wis. (2d) 188, 136 N. W. (2d) 778. Under the statute, the trial court was given no authority to decide whether Huebner was a sex deviate and needed specialized care. In *State v. Sutter* (1958), 5 Wis. (2d) 192, 92 N. W. (2d) 229, we held it was error for a court to decide such issue.

Upon commitment to the department, it has complete control over the defendant and may require his participation in vocational, physical, educational and correctional training and activities and make use of such methods of treatment as it may determine to be conducive to the correction of the person and to the prevention of future violations of law by him. Sec. 959.15 (11), Stats., provides the department shall keep every such person committed to it under supervision and control so long as in its judgment such control is necessary for the protection of the public, subject to various methods of terminating such control. During commitment the department may parole a person if he is capable of making an acceptable adjustment in society and, if he is not discharged from control sooner, he shall be discharged at the expiration of the maximum term prescribed by law for the offense for which he was convicted. The maximum term is reduced by statutory good time earned, but apparently such defendant does not acquire any credit for industrial good time, and in practice a conditional-release date is determined. The department may, however, make an order directing that he remain subject to its control for a longer period of time and apply to the committing court for a review of said order.

If on his conditional-release date the department has made a committing order to retain such defendant in its control and the court has confirmed such order, then the

control of the person continues for a five-year period. The department may discharge the defendant within such period, but if it does not the department must within five years after the date of the last confirmation of its order of retention make a new committing order and a new application for review.

The act provides the court shall notify the person whose liberty is involved in any committing order of the review and for an appointment of a guardian if he is not *sui juris.* A hearing is required and the person under commitment must be given an opportunity to appear in court with counsel and be afforded process to compel the attendance of witnesses and the production of evidence. He may also have a doctor or psychiatrist of his own choosing examine him and if he is unable to provide his own counsel, the court must appoint counsel to represent him. He is, however, not entitled to a jury trial.

While such a hearing is provided upon the expiration of the defendant's conditional-release date, no such hearing, safeguards or recognition of defendant's rights are afforded in the first instance. The determination of whether a defendant convicted of a sex crime is a sex deviate in need of specialized treatment and shall be committed under the Sex Crimes Act, or is not in need of treatment and sentenced as a criminal, is not made by the court as it is in subsequent hearings but is made by an administrative agency with no right provided in the statute for the defendant to confront the doctors making the report, to cross-examine them or to put in evidence in his own behalf on the issue. This was justified in *State ex rel. Volden v. Haas, supra,* on the ground the procedure was in the nature of a presentence examination, and upon conviction a defendant was "subject to whatever loss of liberty the legislature has prescribed for his crime, whether that be imprisonment in the state prison or commitment to the department."

This rationale rested on the concept that a criminal trial terminates when the defendant is convicted and due

process applies only to the trial of the issue of guilt and not to the whole criminal process and at every stage of the proceedings from the defendant's initial court appearance through appeal. Under this theory it has been held the denial to the defendant or his counsel of access to presentence reports even though they may contain hearsay does not violate due process under the Fourteenth amendment. *Williams v. New York* (1949), 337 U. S. 241, 69 Sup. Ct. 1079, 93 L. Ed. 1337; *Waddell v. State* (1964), 24 Wis. (2d) 364, 129 N. W. (2d) 201; *State v. Carli* (1957), 2 Wis. (2d) 429, 86 N. W. (2d) 434, 87 N. W. (2d) 830. Whatever infirmities exist in that theory of due process need not now be examined or discussed. We confine ourselves to the issue of whether a defendant has a right of confrontation and a hearing on a presentence report under the Sex Crimes Act.

The report of the department bears no analogy to and is essentially different from a presentence report for penal sentencing except in the matter of timing. And, neither a commitment nor its procedure under sec. 959.15 (6), Stats., of the Sex Crimes Act is a penal sentence or such sentencing procedure. In the sentencing procedure under criminal law a presentence report is used by a judge in his discretion in the process of determining the length of the penal sentence within the maximum provided by law. The recommendations in the report, if any, are not mandatory. The report of the department of public welfare under the Sex Crimes Act, however, if it recommends specialized treatment, deprives the court of its power to sentence for the crime or to place the defendant on probation for the crime while withholding sentencing. *State ex rel. Copas v. Burke, supra.* If the report recommends treatment, the court must commit the defendant to the department either on a probation status so that he can be treated on an inpatient or an outpatient basis or must commit the defendant to the department for treatment at its sex deviate facility with a deprivation of his liberty for that purpose. Significantly

too, this finding automatically determines the initial maximum period of incarceration for mandatory treatment and in addition subjects the defendant to potential continuing incarceration and treatment under the Sex Crimes Act.

We consider this commitment procedure so essentially different from penal sentencing as to amount to an independent proceeding which determines such important rights of the defendant unrelated to the determination of guilt that due process requires a hearing thereon as much as it does for subsequent hearings on the same issue.

We do not think the failure of the statute to provide a hearing in the first instance can be justified on any theory that such a commitment is only the equivalent of being penally sentenced for the maximum time provided by law for the crime plus a requirement for medical treatment. The Sex Crimes Act is not predicated upon any such theory. It forbids a penal sentence where treatment is recommended by the department and commands a commitment for mandatory treatment, *State ex rel. Copas v. Burke, supra,* and has been so understood, 49 Op. Atty. Gen. (1960), 64. Even release is not according to criminal law but under the provisions of the act.

We think due process does not end with conviction any more than it begins only with the commencement of the trial of the issue of guilt. Of late, the constitutional rights to counsel, to equal protection of the laws, against self-incrimination, and to due process have advanced from the commencement of trial to the preliminary examination and into the police station. *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. (2d) 694; *Sparkman v. State* (1965), 27 Wis. (2d) 92, 133 N. W. (2d) 776; *Escobedo v. Illinois* (1964), 378 U. S. 478, 84 Sup. Ct. 1758, 12 L. Ed. (2d) 977. Such rights now extend to postconviction remedies of appeal and writs of error. *Douglas v. California* (1963), 372 U. S. 353, 83 Sup. Ct. 814, 9 L. Ed. (2d) 811, rehearing

denied, 373 U. S. 905, 83 Sup. Ct. 1288, 10 L. Ed. (2d) 200. Likewise, after conviction the defendant is in need of procedural due process as much as he was during the trial. Recently in *People v. Breese* (1966), 34 Ill. (2d) 61, 213 N. E. (2d) 500, the Illinois supreme court held where a defendant shortly before his penal sentence expired was declared a sexually dangerous person and committed to the custody of the department of public safety that he was entitled to counsel at the hearing and to be intelligently advised of his rights.

The circuit court of appeals for the third circuit in *United States ex rel. Gerchman v. Maroney* (1966), 355 Fed. (2d) 302, considered Pennsylvania's Barr-Walker Act unconstitutional in respect to a denial of a defendant's right to have and cross-examine witnesses against him. The act provided for an indeterminate sentence for certain sex offenses with a maximum life sentence. While the act, unlike the Wisconsin act, allowed the court to determine upon the psychiatric examination whether it was in the best interest of justice to sentence a person convicted of such a sex offense under the provisions of the act, no right of confrontation of witnesses was afforded the defendant. The court held the act constituted an essentially independent proceeding rather than being a part of the sentencing procedure because the court made a new factual finding which went substantially beyond the finding of guilt, and therefore the defendant was entitled to confront and examine witnesses against him. The court also considered psychiatric treatment for sex offenses as prescribing a new and radically different punishment, because release from the indeterminate commitment was dependent upon a determination by the board of parole.

While we do not rest our decision on a denial of equal protection of the laws, we are aware that initial commitments under the Mental Health Act, ch. 51, Stats., for mental illness, infirmity or deficiency are upon a hearing

to the court, and if requested to a jury of six persons, with the right to examine medical witnesses appointed by the court and to offer evidence. While equal protection does not require all persons to be treated in the same manner, the distinction must have some relevance to the purpose of the classification. The conviction of a sex crime as a basis for the denial of a hearing on the issue of mental aberrations and the need for specialized treatment does not seem to be a relevant distinction for the purpose of treatment. The commission of a sex crime may be sufficient grounds to require an examination, but is not sufficient to deny the right in court to contest the agency's findings and recommendations. Nor does the law determine who falls within what classifications, but membership rests upon the unreasonable basis of an uncontestable and unreviewable determination by the department of public welfare. This problem is not unlike that decided in *Baxstrom v. Herold* (1966), 383 U. S. 107, 86 Sup. Ct. 760, 15 L. Ed. (2d) 620, which held equal protection of the laws was denied by the New York statutory procedure under which a person could be civilly committed for mental illness at the expiration of his penal sentence without the jury review afforded other persons and without a judicial determination that he was dangerously mentally ill. In *People v. Olmstead* (1965), 32 Ill. (2d) 306, 205 N. E. (2d) 625, under the Illinois Sexually Dangerous Persons Act, the court held a person was entitled to counsel and a jury trial not only in the original proceedings to be declared sexually dangerous but also under the procedure provided for gaining release.

We think the language in *State ex rel. Volden v. Haas, supra,* that due process does not require a hearing on the administrative report and recommendation for specialized treatment can no longer be approved and is hereby withdrawn. We hold that when a person is convicted of a sex crime and subject to a presentence social, physical and mental examination and the report of the department

recommends specialized treatment, that before a court can place such person on probation in the department with treatment or commit him to the department for treatment under sec. 959.15 (6), Stats., he shall be afforded a hearing on the issue of the need for specialized treatment for his mental or physical aberrations unless such hearing is expressly waived by him. The defendant shall be afforded such hearing with counsel, process to compel attendance of witnesses, production of evidence, an examination by a doctor or psychiatrist of his own choosing, and if he is unable to provide counsel, he shall have counsel appointed for him at public expense, all as provided in sec. 959.15 (14), for hearings after commitment to the department. After such hearing the court shall make its finding and either sentence the defendant under criminal law as provided in sec. 959.15 (5) or commit him to the department under the alternatives of sec. 959.15 (6). In short, the department's recommendation is not mandatory on the court, which shall hold a hearing thereon and make its determination upon the evidence.

This decision in its retrospective effect is limited to the instant case and to pending cases in which a report of the examination has not been made to the court or, if made, not acted upon prior to the date of rendition of this opinion, but shall not apply to any case tried wherein the court has acted upon such report prior to such date unless this question was raised and preserved for appeal. The commitment must be reversed and the case remanded for the purpose of holding a timely hearing on the question of whether Huebner has mental or physical aberrations within the meaning of the Sex Crimes Act which requires specialized treatment. Since the initial mental report of the state department of public welfare is now over a year old, we think the hearing should determine the issue as the facts exist at the time of the required hearing. The custody of Huebner shall

remain in the department pending the determination on such hearing.

*By the Court.*—The commitment to the department of public welfare is reversed, and the cause remanded for further proceedings consistent with this opinion.

CURRIE, C. J. (*dissenting*). I respectfully dissent from that part of the opinion which holds that it is a denial of due process under the Fourteenth amendment to deny to a defendant convicted of a sex crime, who, pursuant to the Sex Crimes Act (sec. 959.15, Stats.), has been found by the department of public welfare to be in need of specialized treatment, the right to a hearing to contest the department's report recommending specialized treatment.

Implicit in the Sex Crimes Act is the fact that commitment for specialized treatment of sex offenders is a phase of the penalty imposed for the crime of which the offender has been found guilty. In practice the sex offender so committed is imprisoned and receives specialized treatment, psychiatric in nature, while so confined. In other words he receives imprisonment plus treatment.

The majority opinion rests on the fallacious assumption that the determination of whether a convicted sex offender shall be committed to the department for such specialized treatment must be made by the judiciary and that it is a denial of due process for the legislature to entrust it to an administrative agency such as the department of public welfare. This issue was laid to rest long ago when the courts upheld the constitutionality of indeterminate sentence laws.[1] It is not a valid ground of constitutional attack that such laws vest the power to determine the length of sentence in an administrative

[1] *Mutart v. Pratt* (1917), 51 Utah 246, 170 Pac. 67; *Cohn v. Ketchum* (1941), 123 W. Va. 534, 17 S. E. (2d) 43; 24B C. J. S., Criminal Law, p. 543, sec. 1975. See also Note 43 Columbia Law Review (1943), 383, 386.

agency instead of the courts.[2] This is because the legislature "has [the] power to define crimes and fix punishments, . . . limited only by the provision that they shall not be cruel or unusual or disproportionate to the character of the offense." [3]

If the legislature can vest in an administrative agency the power to fix the length of a sentence it can also vest in an administrative agency the power to determine whether a person convicted of a sex crime should receive the specialized treatment provided by our Sex Crimes Act and bind the sentencing court to sentence in accordance with such determination. No claim is made that such treatment constitutes cruel or unusual punishment in the sense in which these terms are used in the state and federal constitutions.

Let us suppose that the legislature had provided that if, after sentence of any prisoner to confinement for a sex crime the department determines that such prisoner is in need of specialized treatment for physical or mental aberrations having to do with sex, it should provide such treatment. This clearly would be constitutional in the absence of any showing that such treatment was cruel or unusual. This being so, why is it a denial of due process for the legislature to require the department to make such determination of need for treatment before sentence, but after conviction, and to make it mandatory that the court in its sentence commit the defendant to the department for such treatment. This was the rationale of our holding in *State ex rel. Volden v. Haas.*[4]

---

[2] *Mutart v. Pratt, supra,* footnote 1.

[3] *State v. Woodward* (1910), 68 W. Va. 66, 69, 69 S. E. 385. To the same effect, *Mutart v. Pratt* and *Cohn v. Ketchum, supra,* footnote 1.

[4] (1953), 264 Wis. 127, 58 N. W. (2d) 577. Proposals have been made to employ the same device of the Sex Crimes Act to drug addiction motivated crimes and to require commitment for specialized treatment of such offenders as an alternative to a prison sentence.

The fact that a convicted sex offender, whom the department determines is in need of specialized treatment, has such specialized treatment imposed on him as well as imprisonment while another sex offender whom the department finds is not in need of such treatment receives only imprisonment, does not violate the equal protection of the laws clause of the Fourteenth amendment. The classification made by the legislature rests on a reasonable basis, *i.e.*, the determination by the department of the convicted offender's need for treatment.

The majority opinion seems to intimate that the holding in *Williams v. New York*,[5] that the due-process clause of the Fourteenth amendment does not require that a person convicted after a fair trial be permitted to cross-examine witnesses as to his prior criminal record contained in a presentence report, is passé. This is an assumption I refuse to indulge in. The opinion in *Williams* was written by Mr. Justice BLACK and concurred in by Mr. Justice DOUGLAS, the only members of the court at the time *Williams* was decided who now remain on the court. It would be hard to envision a decision by the present court holding a denial of due process in a criminal case which would not command the concurrence of these two justices.

Furthermore, this court is committed to the holding in the *Williams Case* by our decisions in *Brozosky v. State*[6] and *Waddell v. State*.[7] As this court declared in *Brozosky*:

"When one has been found guilty of an offense against society, no constitutional provision guarantees him the right to produce proof or to try out the issue of what his punishment shall be."[8]

---

[5] (1949), 337 U. S. 241, 69 Sup. Ct. 1079, 93 L. Ed. 1337.
[6] (1928), 197 Wis. 446, 222 N. W. 311.
[7] (1964), 24 Wis. (2d) 364, 129 N. W. (2d) 201.
[8] *Supra*, footnote 6, at page 453.

I consider the report of the department to the court made pursuant to sec. 959.15 (4), Stats., to stand on an even higher plane than a presentence investigation report.

The constitutional arguments now leveled against use of the department's report by the sentencing court without affording the convicted sex offender an opportunity to rebut the same were most carefully considered by this court in *State ex rel. Volden v. Haas.*[9] I am no more impressed with the present arguments than I was then. The *Volden Case* was rightly decided and should be adhered to.

I would affirm.