**STATE of Iowa, Appellee,**

v.

**Norris W. YATES et al., Appellants.**

**No. 54797.**

Supreme Court of Iowa.

June 30, 1976.

Norman G. Jesse, of Jesse, Le Tourneau & Johnston, Des Moines, for appellants.

Richard C. Turner, Atty. Gen., John G. Mullen, Asst. Atty. Gen., William E. Gibbons, County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

MASON, Justice.

Norris W. Yates, Janis Platt and Steve Ewoldt were each charged by separate county attorney's information with the crime of resisting execution of process in violation of section 742.1, The Code. At arraignment each defendant entered a plea of not guilty and their cases were consolidated for trial to a jury which resulted in a verdict finding them guilty of the crime charged. Each defendant appealed and upon the joint application of defendants and the State the cases were consolidated on appeal to this court as common questions of law and fact exist with respect to each defendant.

Section 742.1, The Code, in pertinent part provides:

"Resisting execution of process. If any person knowingly and willfully resist or oppose any officer of this state, or any person authorized by law, in serving or attempting to execute any legal writ, rule, order, or process whatsoever, *or shall knowingly and willfully resist any such officer in the discharge of his duties without such writ, rule, order, or process,* he shall be imprisoned * * * ." (Emphasis supplied).

Defendants maintain the trial court erred: (1) in giving instruction 8 and in refusing to adopt as a part of that instruction changes requested by defendants and (2) in failing to submit to counsel the instructions in substantially their final form before argument to the jury. These contentions present the issues for review on this appeal.

The events which culminate in this appeal occurred the morning of May 12, 1970, when a bus scheduled to transport inductees from Ames to Des Moines for their final physical examination was being loaded.

Ames Chief of Police, Arnold Siedelmann, along with four Ames detectives, five or six regular policemen, two BCI agents and two officers of the Story County sheriffs department, were on hand outside the draft board offices by approximately 5:30 a. m. to quell any anticipated disturbance.

Siedelmann testified that at the arrival of the bus at approximately 5:40 a. m. "people appeared to descend on the area from all directions." When the bus was loaded with inductees and a Mrs. O'Donnell announced the bus was ready to leave, Norman Burrell, an unconvicted defendant, jumped from the curb to the front of the bus and asked if the crowd of some 75 to 100 people were going to allow the bus to leave. Burrell was "placed back on the curb two or three times by police officers but kept getting back into the street. People began spilling into the street."

It is beyond dispute the demonstrators, some sitting on the pavement with arms locked, blocked the bus from moving forward or backward any great distance. While the testimony conflicts as to when Burrell was arrested in relation to a warning given by Siedelmann to the crowd, it appears he was bodily carried to a police car.

It became obvious to Siedelmann the police were incapable of keeping the demonstrators off the street. He testified he "stopped all of the officers from what they were doing and told the people sitting on the ground or anyone in the area that could hear it, that anyone interfering with the bus would be charged with disturbing the peace and would also be charged with an unlawful assembly; *and that anyone refusing to walk to the police cars on their own power would be charged with resisting arrest.* I also said that anyone not wishing to be arrested could simply move back up on the curb." (Emphasis supplied).

Whether Siedelmann in fact warned the demonstrators as to resisting arrest was questioned. Deputy Sheriff Albert Moore

testified the resisting arrest warning was given. Others could not remember. One demonstrator "did not hear" anything mentioned concerning resisting arrest. Defendant Platt said that to her knowledge, while disturbing the peace and unlawful assembly were mentioned, the "third one" was not.

The demonstrators in any event did not heed the warning. Defendant Yates, an English professor at Iowa State University, was dragged from a sitting position to a squad car by Chief Siedelmann. Yates apparently made himself dead weight, and while an observer testified Yates was "completely off balance and * * * surprised," nothing in the record indicates an intention to walk to the police car. Yates testified he offered no resistance and denied, as testified to by Siedelmann, he stretched out his arms to prevent being put into the squad car.

Officer LeRoy Arthur Downs removed defendant Platt from the scene. According to Downs' testimony, when he first attempted to lift her up there was a scuffle. "In the initial instance, she did not want to be removed," a "scuffle" ensued and in the process Downs was "kneed." The witness stated he "couldn't say" whether the kneeing was intentional or not, but he "felt it was." Platt denied having kneed the officer and stated when Downs was lifting her up her legs were tangled. She apparently walked peacefully to the squad car.

Defendant Steve Ewoldt testified he saw an officer drag a girl back by the hair (which was denied). He ran at the officer, intending to kick him. Mr. Jim Mone, a photographer for the Ames Tribune, witnessed Ewoldt administer a karate type kick to Assistant Chief of Police Tom Lyttle. Lyttle testified he was lightly struck from behind and was uninjured. In any event, Mone wrestled Ewoldt to the ground.

Officer Koch testified Ewoldt was dragged to the squad car, whereas Ewoldt asserted he was not dragged but walked to the car with a policeman holding his arm.

It is clear the police did not inform defendants at the scene they were actually under arrest. Also apparent is the fact that at the time the demonstrators sat in the street at least Yates expected to be arrested. In all, some fifteen persons were taken into custody. Burrell who has been mentioned earlier in this opinion was also charged with violating section 742.1, The Code. He was tried jointly with the defendants involved in this appeal. However, the jury was unable to reach a verdict in his case. Apparently, defendants herein were earlier convicted of disturbing the peace and unlawful assembly.

Defendants' motions for directed verdict made at the end of the State's evidence and renewed at the close of all evidence were overruled and the matter submitted to the jury. Following the verdicts of guilty defendants filed motions in arrest of judgment and for new trial. These were overruled and Yates and Platt were sentenced to 15 days in jail and Ewoldt to 30 days. All three were fined $100.

I. The first issue presented for review arises from defendants' attack directed to instruction 8 as given. They contend this instruction by providing "one officer may advise the person or persons that he or the group is under arrest *or are under arrest* if certain actions are not taken" in effect allows arrest "subject to condition."

It is defendants' position a person arrested must be advised that he is under arrest in order to know when he must submit to custody and a resisting arrest charge cannot be placed upon a conditioned arrest or an arrest subject to the happening of an event in the future. They maintain that "under the language used in the instruction a person could be arrested subject to not being arrested if they move * * *." In line with this argument defendants requested the emphasized portion of the instruction be replaced with the phrase "or will be placed under arrest."

■ It is apparent at the outset the instruction as given and as it would have read with defendants' requested language imparts the same general idea; that is, failure to take certain action will result in arrest. Under the present factual circumstances it

is difficult to ascertain how the jury could have been confused or would have interpreted the instruction in any way other than as stating the concept defendants were to be placed under arrest if they failed to move.

█ If an instruction covers the legal principles involved, as they are raised by the facts in the case, the trial court has the right to choose its own language to best accomplish that purpose. See *State v. Robinette,* 216 N.W.2d 317, 318 (Iowa 1974).

Defendants concede in written brief and argument their actions and those of others involved in the demonstration fully warranted the arrests for disturbing the peace but insist the resisting arrest charges were quite another matter. This contention is based upon an alleged failure by the State to establish that any one of defendants was advised he or she was under arrest at the time he or she was taken into custody.

There is considerable testimony offered by defendants bearing on their contention they did not knowingly and willfully resist any of the officers in the discharge of the officers' duties which is the offense described in the emphasized portion of section 742.-1, set out earlier, and the one upon which the charges made against these defendants were based. However, no one contends passive resistance cannot constitute resisting arrest. In this connection see Annot., 44 A.L.R.3d 1018, 1050–1052, section 13.

Viewing the evidence in its light most favorable to the State it appears that although defendants were not actually told they were under arrest, the police did state they *would be* arrested for disturbing the peace and unlawful assembly if they did not move to the curb and would be charged with resisting arrest if they did not walk to the police cars under their own power. It cannot seriously be argued defendants did not fully realize what would transpire if they remained seated on the pavement.

This court has construed section 755.7, The Code, our arrest statute, as follows:

"Section 755.7, Code of Iowa, 1958 and 1962, I.C.A., provides that a person making an arrest must inform the person to be arrested of his intention to arrest him, the cause of the arrest, of his authority to make it, and inform that he is a peace officer if he is one, *except* 'when the person to be arrested is actually engaged in the commission of or attempt to commit an offense, or escapes, so that there is no time or opportunity to do so; * * * .' These provisions must, of course, be construed as requiring only substantial compliance, and do not require strict compliance where it is impractical or futile as where the person about to be arrested knows of the officer's intention and purpose or when the officer has no reasonable opportunity to inform him. * * * [citing authorities]. In 6 C.J.S. Arrest § 6e, it is stated, 'An officer must, ordinarily, make known to the person he seeks to arrest without a warrant his authority, and the object and cause of the arrest * * * although circumstances surrounding the arrest may, in a proper case, dispense with one or more of these requirements. In accordance with this exception to the rule, an officer need not inform a person who is committing an offense in his presence, or who is pursued immediately after the offense, of the cause of his arrest; and, where an officer is met with a demonstration of force at the outset, he need not go through the formality of informing the person of his intention to arrest him or of the cause of his arrest.' Also see 5 Am.Jur.2d, Arrest, § 24." *State v. Frink,* 255 Iowa 59, 66–67, 120 N.W.2d 432, 437. (Emphasis in the original).

This statement by the Florida supreme court in *Giblin v. City of Coral Gables,* 149 So.2d 561, 562 (Fla.1963), is relevant:

" * * * The requirement of communication of the 'intention or purpose * * * to effect an arrest' is never construed, so far as we can determine, in a strict or literal sense in a situation such as that at bar. In the most technical treatment of the subject the authorities note that 'there is no required form of words to announce the purpose to arrest,' and upon the theory that 'the law does not require the doing of useless things' it is held that *when detention*

*by an officer follows immediately on commission of an overt act of criminality or illegality, the offender must be aware, without formality, of his purpose to arrest. * * * ."* (Emphasis supplied).

Thus, it may be said, in the type of situation presented here where the acts take place in the officers' presence, " * * * there must exist the *intent* to take into custody and a corresponding *understanding* by the person arrested that he is in 'custody,' although no formal declaration of arrest is required. * * * [citing authorities]." (Emphasis supplied). *Huebner v. State,* 33 Wis.2d 505, 147 N.W.2d 646, 652.

■ It would be strained logic indeed to conclude when the officers first acted to remove the demonstrators they did not know they had been arrested. Defendants had been specifically informed arrest would follow their failure to vacate the street. The statement of intent in connection with the officers' overt acts *must* have led defendants to the understanding they were under arrest. Defendants' contentions urged in support of their attack on instruction 8 are without merit.

II. The other issue presented for review concerns defendants' contention "the Court erred in failing to submit the instructions to counsel in substantially final form prior to argument to permit counsel to adequately argue the law as applied to the facts, and by failing to submit the instructions to counsel before reading them to the jury." It is claimed defendants were prejudiced due to the fact the formal charge. herein was "resisting execution of process" while the proposed instructions refer to "resisting an officer in the performance of his duties. Prejudice appears in the argument of the State in which, in reliance upon the proposed instruction language, extensive discussion was had on other duties of an officer not finally included in the instruction."

The State counters rule 196, Rules of Civil Procedure, as it read at the time of the 1970 trial, did not require the trial court to. submit the instructions in their final form prior to jury argument, and that here, in any event, the proposed instructions were in effect "final instructions since time was allowed for counsel to scrutinize the instructions; objections were made on the record." In the alternative, it is asserted defendants' failure to object to the trial court's failure to submit the instructions in their final form prior to reading them to the jury constituted waiver. Finally, the State urges the trial court's failure to comply with the mandates of the rule was harmless error.

The record discloses that following the court's ruling on defendants' motion for a directed verdict the "proposed" instructions were submitted to counsel. At this time defendants lodged their objections. The trial court took defendants' objections to instructions 5, 7, 8 and 9 "under advisement." Objections to instructions 10 and 12 were overruled. In order that the trial judge could work on the instructions, he asked counsel if they objected to his being absent during argument to the jury. Defense counsel stated: "I don't have any objection to the Court being absent during closing arguments. In connection with the Instructions I have tried to be explicit as possible in my objections to the Instructions in their proposed form before they are submitted to the jury in order that the Court might correct its errors. I would, however, in accordance with the law in Iowa, reserve by formal objections and exceptions to the Instructions to the time of sentencing."

The final draft was not submitted to counsel before the instructions were read to the jury.

Defendants in motion for new trial asserted "the Court erred in failing to submit the instructions in their final form to counsel before argument to the jury so counsel could be advised prior to argument what the law of the case was for the purpose of arguing the facts with relation thereto thereby depriving Defendant of due process of law and a fair and. impartial trial to a jury in violation of his rights under the Fourteenth Amendment to the United States Constitution and Article I, Sections 9 and 10 of the Iowa Constitution."

Defendants then repeated their objections to instructions 5, 7, 8, 9, 10 and 12.

The trial court in overruling the motion concluded rule 196 "requires the Court to submit a preliminary draft of its instructions to counsel prior to final argument. This the Court did in this case. There is no obligation upon the Court to submit *final instructions prior to argument.*"

Rule 196, R.C.P., at time of trial read in pertinent part:

" * * * Before argument to the jury begins, the court shall furnish counsel with a preliminary draft of instructions which it expects to give on all controversial issues, which shall not be part of the record. Before reading them to the jury, the court shall submit to counsel its instructions in their final form, noting this fact of record, and granting reasonable time for counsel to make objections after argument to the jury and before the instructions are read to the jury. * * *."

As pointed out in *State v. Horstman,* 222 N.W.2d 427, 430 (Iowa 1974), rule 196, as it previously existed, required two distinct sets of instructions. First, a "preliminary draft" was to be submitted to counsel *before jury arguments.* Second, a "final" draft was to be submitted *before instructions were read to the jury.* And in this regard, " * * * a 'preliminary' draft connotes a preceding or preparatory draft, logically subject to revision into better form if such is necessitated." *State v. Ritchison,* 223 N.W.2d 207, 211 (Iowa 1974).

 As pointed out, the only complaint advanced by defendants at the trial court level in regard to the matter now under consideration was that raised in paragraph 4 of defendants' motion for new trial. The sole contention there urged was that the trial court erred in failing to submit the instructions in their final form to counsel *before argument to the jury.* As the record discloses counsel was furnished a preliminary draft of the court's proposed instructions before argument. Objections and exceptions were taken at that time. Under the provisions of rule 196, R.C.P., as in effect at the time of the trial, defendants' contention is without merit.

A somewhat similar problem was considered and determined adversely to defendants' position here in *State v. Ritchison,* 223 N.W.2d at 209–211.

The further contention defendants now make that the court erred in failing to submit the instructions in substantially final form to counsel *before reading them to the jury* was not urged in the trial court. Ordinarily, issues not raised in the trial court including constitutional questions cannot be effectively asserted for the first time on appeal. *State v. Greene,* 226 N.W.2d 829, 832 (Iowa 1975) and authorities cited. Hence, the contention in this respect presents nothing for review here.

Every contention and assertion of defendants have been considered whether specifically mentioned in his opinion or not and we have found none with merit.

The case is

Affirmed.