STATE, Respondent, v. LINGFORD, Appellant.

*No. State 136.   Argued June 6, 1969.—Decided July 3, 1969.*
(Also reported in 169 N. W. 2d 617.)

616

For the appellant there was a brief and oral argument by *James J. Murphy* of Milwaukee.

For the respondent the cause was argued by *Theodore J. Hodan,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

ROBERT W. HANSEN, J. The defendant entered a plea of guilty and was found guilty of two counts of indecent behavior with a child. Upon recommendation of the state welfare department, he was committed for specialized treatment as a sex deviate as authorized by the Sex Crimes Act.[1] The basic contention of defendant is that he is entitled to a withdrawal of his plea of guilty because it was entered ". . . without knowledge . . . that the sentence actually imposed could be imposed."[2] The

[1] Sec. 959.15, Stats. "The purpose of the Sex Crimes Act commonly known as the 'Sex Deviate Law' is to protect society from the commission of dangerous sex crimes." *Huebner v. State* (1967), 33 Wis. 2d 505, 521, 147 N. W. 2d 646.

[2] *State v. Reppin* (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9.

record does not support such contention nor require such withdrawal of plea. Here is what preceded the trial court's acceptance of the plea of guilty:

On the scheduled day of the trial, the defendant appeared and through his attorney stated to the court that he desired to plead guilty to two counts of indecent behavior with a child. Each count was then read to him. As to each count the following questions were asked and answers given:

*"The Court:* Do you fully understand what you are charged with as to Count No. 1? (Question repeated as to Count No. 3.)

*"Defendant:* Yes, sir. (Answer repeated as to Count No. 3.)

*"The Court:* Do you realize that if you are found guilty as to taking indecent liberties with that child, that you could be sentenced to a term at the Wisconsin prisons up to ten years? (Instruction repeated as to Count No. 3.)

*"Defendant:* Yes, sir.

*"The Court:* Have any said threats or any said promises been made to you by anyone at all to get you to enter a said guilty plea as to Count No. 1, which has just been read to you? (Question repeated as to Count No. 3.)

*"Defendant:* No, sir. (Answer repeated as to Count No. 3.)

*"The Court:* Are you entering that guilty plea of your own free will?

*"Defendant:* On the advice of my attorney, yes.

*"The Court:* And are you entering it of your own free will?

*"Defendant:* Yes.

*"The Court:* Do you in your own heart feel you are guilty of that offense?

*"Defendant:* In a way, yes.

*"The Court:* Sir, I don't want any of this half ways 'in a way' or not. Do you feel you are guilty of that offense or do you feel you are not guilty?

*"Defendant:* I feel I am guilty, Your Honor.

*"The Court:* Now, sir, referring to Count No. 1 and to Count No. 3, do you realize that if you are found guilty

on either of those two counts or both of those two counts, this court must order sex deviate examination pursuant to section 959.15?

"*Defendant:* I did not know that.

"*The Court:* Well, I am advising you of that now. Further be advised that if you are found to be a sex deviate, this court will order you committed to the Wisconsin Department of Welfare for an indeterminate period of supervision or confinement in an institution until such time as the psychiatrist and psychologist at the said institution shall determine that you are no longer a said danger to society, when you shall be released on parole; that said supervision and/or control over you can extend for a period of up to five to ten to fifteen years. Do you realize that?

"*Defendant:* Yes, sir.

"*The Court:* That period of control over you. At any time after they have put you on parole, should they feel that you are in need of further hospitalization or treatment, they can bring you back to the institution for further treatment and control. Do you realize that?

"*Defendant:* Yes, sir.

"*The Court:* Now understanding all of this, do you want to enter a guilty plea as to Count No. 1 and Count No. 3?

"*Defendant:* May I talk with my lawyer, please?

"*The Court:* Yes, sir, you can.

(short pause.)

"*The Court:* On the first and third count *you have had an opportunity to discuss that again with your attorney?* (Emphasis added.)

"*Defendant:* Yes, those two I will plead guilty to."

The first of the three portions of the transcript underlined is a reminder that the pleas of guilty here involved were entered by defendant on advice of his trial counsel. The defendant's attorney at the trial was an able and experienced barrister, Louis Wiener, who has specialized in the trial of criminal cases for many years. The trial

court had the right to presume that the defendant's attorney had fulfilled his duty of proper representation by fully explaining to the accused the nature of the offense charged, the range of penalties, the possible defenses, and that said counsel had satisfied himself as defendant's attorney that the defendant understood such explanations before permitting him to enter a plea of guilty.[3] Where conviction involved, as it did here, mandatory presentence investigation by the state welfare department and possible commitment until cured for specialized treatment as a sex deviate, the presumption included that the attorney made known to his client such corollary consequences of his pleas of guilty.

The second exchange of questions and answers underlined above clearly indicates that the trial court correctly informed the defendant that his possible commitment as a dangerous sex deviate would be for an indeterminate period and until it was determined that he was ". . . no longer a said danger to society." Granted the difficulty of capsulizing an involved statute, this correctly informed the defendant that if he were found to be a sex deviate, he would be committed for an indeterminate period of supervision or confinement in an institution for treatment ". . . until such time as the psychiatrist and psychologist at the said institution shall determine that you are no longer a said danger to society, when you shall be released on parole." The essential elements of a commitment under the Sex Deviate Law are all there: Commitment for an indefinite period of supervision or confinement until cured.

Postconviction counsel finds error in the additional statement by the trial court that ". . . said supervision and/or control over you can extend for a period of up to five to ten to fifteen years." Referring to the term of *probable* confinement, the comment errs on the ground

---

[3] *See State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295.

of overstatement.[4] Referring to the *possible* period of confinement, it is an understatement for a dangerous sex deviate who remained a danger to the community might of course not become entitled to parole or release under the Sex Crimes Act. The majority sees the "five to ten to fifteen" addendum as an attempt by the trial court to emphasize the serious consequences of a commitment for treatment. It does not see it as reaching back to erase the clear instruction that commitment was to be for treatment—for an indeterminate period of time—and until parole or release involved no further danger to the public.

In analogous situations where persons are committed by courts for treatment—for example, mental illness, narcotics addiction, untreated tuberculosis—to require a warning that lifelong institutionalization might accompany failure to respond to treatment would be inconsistent with all modern concepts of encouraging patient cooperation with the treatment program. Recovery is not aided by stressing a remote possibility as a predictable probability. If such warning that nonresponse to treatment may mean nonrelease is to be required, it is adequately covered by the explanation that the commitment is for treatment until cured. The important consideration here is the one set forth by the trial court that commitment is for an indefinite period and until "you are no longer a said danger to society."

This is particularly so where, as the third underlined section of the transcript reveals, the answer of the de-

---

[4] A recent study of persons committed under the Wisconsin Sex Crimes Law reveals that between July, 1951, and June 30, 1963, 978 deviated persons were sent to the sex crimes facility for treatment. Of this number 717 were paroled. Most of these served less than eighteen months in the treatment program and more than one third were paroled in less than one year. Pacht and Roberts, "Factors Related to Parole Experience of the Deviated Sex Offender," *Journal of Correctional Psychology*, Vol. 3, No. 3 (Jan.—Feb., 1968).

fendant to the court's explanation of the operation of the Sex Deviate Law was, "May I talk with my lawyer, please?" That request was properly granted. After such conference of counsel and client, when court resumed, the judge commented, "On the first and third count, you have had an opportunity to discuss that again with your attorney?" The defendant responded, "Yes, those two I will plead guilty to."

So we are not dealing just with the presumption that a defendant, represented by counsel, has, prior to arraignment, ". . . been informed of the nature of the offense with which he is charged, the range of punishment, the possible defenses, and that he has understandingly considered these factors with the help of counsel."[5] Here we have a contemporaneous consultation, at the request of the defendant, between attorney and client for the purpose of having the attorney explain the explanation of the possible penalties as given by the judge. To hold that the defendant here did not understand the possible penalties here (after court was recessed so that his attorney could explain them to him) would be to assume the complete incompetence of trial counsel. A trial attorney is not a baby-sitter for a defendant. He is counsellor, advocate and adviser. This is the sole justification for the tremendous cost to the public of court-appointed counsel for indigent defendants in criminal trials. To the suggestion on this appeal that the defendant is neither of high intelligence nor well educated, the answer is that his attorney is both. That is why he was appointed at public expense to represent the defendant.

The extensive interrogation by the trial court occupies five pages in this record. The prologue is the presumption of prearraignment informing the defendant as to possible penalties by his attorney. The epilogue is the mid-hearing conference of defendant and counsel on the

---

[5] *State v. Koerner* (1966), 32 Wis. 2d 60, 65, 145 N. W. 2d 157.

possible commitment under the Sex Deviate Law. Giving weight to these three factors, we conclude that the pleas of guilty were understandably and voluntarily made by the defendant with full knowledge of the possible penalties, including commitment as a sex deviate under the Sex Crimes Act.

The defendant also contends that the trial court erred in failing to appoint a publicly compensated psychiatrist to assist him at the evidentiary hearing concerning his sexual deviation. In *Huebner v. State*,[6] this court held that where the welfare department recommends that a defendant convicted of a sex crime be given specialized treatment, he has a right to a hearing to challenge his alleged status as a sex deviate. As adjuncts to such right to a hearing, this court held:

"The defendant shall be afforded such hearing with with counsel, process to compel attendance of witnesses, production of evidence, an examination by a doctor or psychiatrist of his own choosing, and if he is unable to provide counsel, he shall have counsel appointed for him at public expense, all as provided in sec. 959.15 (14), for hearings after commitment to the department. After such hearing the court shall make its finding and either sentence the defendant under criminal law as provided in sec. 959.15 (5) or commit him to the department under the alternatives of sec. 959.15 (6)." [7]

The language as to process, witnesses and counsel comes from the statute governing applications for review on the question of continuing control by the department;[8] it is made applicable to the initial hearing as to commitment to the department. The defendant contends that, once the court found him indigent and appointed an attorney at state expense for him, it was bound under *Huebner* to appoint a doctor or psychiatrist for him at state expense when request therefor was made. This

---

[6] *Supra*, footnote 1, pages 528, 529.

[7] *Id.* at page 529.

[8] Sec. 959.15 (14), Stats.

would leave no area of court discretion once an attorney was provided for a defendant at public expense. While the term, "indigent," may conjure up a picture of a penniless individual, without cash resources or credit opportunities or income of any kind, the economics involved is often more borderline than that. It is here.

Before reaching the question of entitlement to a publicly paid doctor or psychiatrist, selected by the defendant or appointed by the court, the defendant was required to establish that he was not able to procure such additional medical testimony on his own and out of his own resources. Here the trial court found that he was able to hire his own medical or psychiatric witness if he so desired. The trial court found that the defendant ". . . can hire his own psychiatrist if he wishes to have one in court to contest this finding in this case. He is able to hire his own psychiatrist . . ." This involved more than a finding that the defendant was regularly employed and earning $91 per week, $5 per week more than at the time counsel was appointed for him. The trial court referred to the fact that, earlier in this case, the defendant ". . . was able to hire a psychiatrist and psychologist before." On that occasion he borrowed the money from his employer and had paid back the employer by the time the request for a publicly paid psychiatrist was made. There is no proof nor offer of proof in the record that the defendant could not have secured a second psychiatric witness in exactly the same manner and from the same source as to finances he had used on the first occasion.

More importantly, we cannot close our eyes to the balance of the record in this case. Prior to sentencing, Attorney Wiener urged that the defendant be given outpatient treatment rather than treatment in the state facility. At that time, on behalf of and in the presence of his client, he assured the court that ". . . the man is working, wants to take treatment and will *at his own expense*. His wife is working, and he is working and

*they can afford to pay."* Where the defendant's ability to pay for even extended psychiatric treatment is asserted at the time of sentencing, it is difficult to believe that, five weeks earlier, he was "indigent" and needed a public subsidy to make possible his securing a psychiatric witness. There is no basis for finding his financial situation altered in any way between the time he claimed indigency and the time he stated his full ability to pay for all psychiatric treatments required. On this record we would not find an abuse of discretion on the part of the trial court in finding that the defendant was able to provide psychiatric testimony on his own behalf and to pay for the expense involved. Upholding the trial court's finding on this finding may make it unnecessary to reach the question of whether there was here a waiver by the defendant of his right to an evidentiary hearing on the recommendation of the welfare department that would foreclose him from complaining that such hearing was not properly conducted or not held at all. On this point it is enough here to quote the following excerpts from the record that establish the fact of waiver:

"*Mr. Wiener:* If the Court please, in the case of State vs. Lingford, after reading the report of the Department of Public Welfare in this case, it is our position that it would be to the benefit of the defendant under present circumstances to waive an evidentiary hearing and abide by the recommendation of that department as to specialized treatment."

"...

"*The Court:* Do you wish to contest the said findings of the Wisconsin Department of Welfare that you are a sex deviate?

"*Mr. Wiener:* The Judge means by that, do you want to fight the report from the Department of Welfare that you are a sex deviate, or do you want to take the benefit of their recommendation that you are and get the treatment. That's what the Judge means. It may take some years to cure you, or not. Are you satisfied?

"*The Defendant:* Yes.

"*The Court:* What do you want to do? Do you want to accept their recommendation or do you want to contest and so fight their recommendation?

"*The Defendant:* I don't wish to contest their recommendation.

" . . .

"*The Court:* All right. In other words, that you do want to receive this treatment and therapy?

"*Defendant:* Yes, sir, Your Honor.

"*The Court:* The Court allows the defendant to withdraw his request for the said hearing . . . ."

Again, five days after the defendant had been committed pursuant to the Sex Crimes Act, he reappeared in court with his attorney who stated: ". . . we have come to the conclusion not to raise any or ask for any further proceedings or any further action so far as the final disposition of the Court. We both believe that is a step which would be most beneficial to the final outcome of this case." The court responded: "What do you mean?" Defendant's attorney explained: "That we do not proceed any further with any further hearings." The trial court then stated:

"*The Court:* Then you are reaffirming the decision made earlier by you and your client that you do not wish to challenge the said findings of the Wisconsin Department of Public Welfare psychiatrists and psychologists that this defendant is a sex deviate at this time and needs treatment and therapy?

"*Mr. Wiener:* That is correct.

"*The Court:* Is that correct, Mr. Lingford?

"*Defendant.* Yes."

On this record we find no error as to either of the two rulings of the trial court challenged by this appeal

*By the Court.*—Order affirmed.

HALLOWS, C. J. (*dissenting*). I must dissent from the conclusion of the majority that the accused pleaded guilty with full knowledge of all possible penalties. When first arraigned on the charge of taking indecent liberties with a child and while being represented by counsel, the

accused stated he understood he could get a criminal penalty of up to ten years. He had entered the plea on the advice of his attorney voluntarily and of his own free will, but in doing so he had not been advised by counsel and thus did not know that if the court accepted his plea, it was required to order a sex deviate examination pursuant to sec. 959.15, Stats. The *Strickland* presumption that an accused is fully advised of possible penalties by his counsel was not valid in fact at this point in the proceeding.

The court then undertook to advise the accused, but in so doing I think made a materially ambiguous statement, certainly ambiguous to a layman under the tension of being sentenced. The court stated in reference to commitment for an indeterminate period of supervision ". . . that said supervision and/or control over you can extend for a period of up to five to ten to fifteen years." This illustration by the court can reasonably be interpreted to mean indeterminate up to a maximum of fifteen years. After this statement the accused talked to his counsel and again pleaded guilty. The majority assumes this was for the purpose of explaining the possible penalties of the charge. This is pure speculation. If the instructions were as clear as the majority believes them to be, there would be no need for it to assume they needed explanation by counsel. I think the presumption laid down in *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295, that an accused represented by counsel has been fully explained, the nature of the offense charged, the range of the penalties, the possible defenses, and that said counsel has satisfied himself as the accused's attorney that the accused understood such explanations before permitting him to plead guilty, was overworked in this case in view of the fact that the attorney allowed his client in the first instance to plead guilty when he was ignorant that a sex deviate examination pursuant to sec. 959.15, Stats., was mandatory on the court.

The ambiguity was repeated at the time the accused waived the *Huebner* hearing. Apparently the judge was not sure the accused understood the potential penalties because he asked, "Does he realize that and that he could conceivably be under their control from five to ten to fifteen years; or on the other hand, they can release him at any time earlier . . ." Here the court treated five, ten and fifteen years as disjunctive to a shorter period. This defendant just was not clearly and unambiguously advised of the total consequences of being found a sex deviate.

An error in overstatement is as disastrous as an understatement because the result is likewise erroneous. The court has a demanding and grave duty in accepting a plea of guilty. It is not enough that part of his instructions is correct. Nor is it justified in giving an ambiguous statement because there is therapeutic value in not stating the ultimate consequences of an illness. One pleading guilty to a crime is entitled to know what he is getting into.

In this court's experience many attorneys and some trial judges are not fully aware of the consequences of incarceration as a sex deviate and they are not aware the sex deviate facility is the state prison in Waupun, the same place the accused would be sent under a criminal sentence. Nor are most attorneys and judges aware or familiar with the course, nature or extent of treatment at the sex deviate facility.

It is not a question of whether this accused is guilty or not guilty or the consequences of being a sex deviate are not so bad because many sex deviates are paroled. The question presented is one of procedural due process and under the manifest injustice rule of *State v. Reppin* (1967), 35 Wis. 2d 377, 151 N. W. 2d 9, the accused should have been allowed to withdraw his plea. Consequently I would reverse.

I am authorized to state that Mr. Justice WILKIE and Mr. Justice HEFFERNAN join in this dissent.